UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————X

KARKANIAS RESEARCH, LLC d/b/a/
CYTIRA, and GEORGE KARKANIAS,
a/k/a CYTIRA, INC.

       07-CV-06113 (RJH)

       Assigned to: Hon. Richard J. Holwell,
       U.S.D.J.

             Plaintiffs,

    -against-

       **DEFENDANT LIFESPAN'S**
       **MEMORANDUM IN SUPPORT OF**
       **MOTION TO DISMISS COMPLAINT**
LIFESPAN BIOSCIENCES, INC.,       **OR, IN ALTERNATIVE, TO**
       **TRANSFER VENUE**

             Defendant   X

————————————————————

       THELEN REID BROWN RAYSMAN
       & STEINER LLP
       John Fedun
       900 Third Avenue
       New York, New York  10022
       Direct Dial:  (212) 895-2125
       Direct Fax:  (212) 829-2276

       *Attorneys for Defendant LifeSpan BioSciences, Inc.*

Of Counsel:

    Glenn R. Nelson, WSBA #5758
    Oles Morrison Rinker & Baker LLP
    701 Pike Street, Suite 1700
    Seattle, WA  98101
    (206) 623-3427
    Fax:  (206) 682-6234

## **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ....................................................................................1

II.   STATEMENT OF FACTS ..........................................................................................1

III.  ARGUMENT ...............................................................................................................6

    A.    PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR LACK OF
         PERSONAL JURISDICTION. ............................................................................6

         1.    General Requirements to Establish Long-arm Jurisdiction in a Federal
             Diversity Case. .......................................................................................6

         2.    Personal Jurisdiction Does Not Exist Under the New York Long-arm
             Statute. ...................................................................................................7

             a.    There is No Personal Jurisdiction Under CPLR Section 301. .........7

             b.    There is No Personal Jurisdiction Under CPLR § 302(a)(1). ..........8

                 i.    Plaintiffs Can Not Show Defendant Transacted Any
                    Business Within New York. .................................................9

                 ii.   Plaintiffs Cannot Show Defendant "Contract[ed]
                    Anywhere to Supply Goods or Services" in New York. ....11

             c.    Plaintiffs Cannot Establish Personal Tort Jurisdiction Under
               § 302(a)(3). ................................................................................18

         3.    Defendant LifeSpan's Contacts With New York Fail to Meet the Due
             Process "Minimum Contacts" Requirement of *International Shoe*. .........19

    B.    THIS ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE OR
         IN THE ALTERNATIVE, TRANSFERRED TO THE WESTERN
         DISTRICT OF WASHINGTON. ......................................................................21

         1.    Under 28 U.S.C. § 1391(a), Venue for This Diversity Action is
             Improper in the Southern District of New York. ......................................21

         2.    The Court Should Transfer Venue to the Western District of
             Washington Under 28 U.S.C. § 1404(a). ................................................22

IV.   CONCLUSION ..........................................................................................................25

i

## I.    PRELIMINARY STATEMENT

Defendant LifeSpan Biosciences, Inc. ("LifeSpan"), a Washington corporation, moves to dismiss Plaintiffs' Complaint under FRCP 12(b)(2) on the grounds that this Court lacks personal jurisdiction over LifeSpan under the New York Long-arm Statutes, New York Civil Practice Laws §§ 301 and 302(a)(1) and (3).

LifeSpan also moves to dismiss Plaintiffs' Complaint under FRCP 12(b)(3) and 28 U.S.C. § 1391(a) on the grounds that the Southern District of New York is an improper venue for this case to be brought against LifeSpan. In the alternative, this action should be transferred under 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Washington, at Seattle, where LifeSpan maintains its principal place of business and where it conducted the research study which is the subject of this action.

## II.    STATEMENT OF FACTS

LifeSpan performs immunohistochemistry (IHC) services for biotechnology and pharmaceutical companies. LifeSpan uses molecular pathology and imaging technology techniques to test reactions of tissue samples to antibodies.[1] LifeSpan maintains a website to allow existing and potential customers throughout the world to obtain information and to contact LifeSpan.[2] During the relevant period in 2006 and 2007, LifeSpan did not and currently does not utilize any print ads or direct mailings to potential customers.[3] During the relevant period in 2006 and 2007, LifeSpan's website was and currently is the only source of information about LifeSpan available to

---

[1] Declaration of Michelle Barbo ¶ 2.

[2] *Id.*

[3] *Id.*

potential customers in New York.[4]  During the relevant period in 2006 and 2007, LifeSpan did not, and currently does not, maintain any office or employees in New York.[5]

The contract at issue in this case arose from Plaintiffs contacting LifeSpan to perform a research study.[6]  In late March 2006, George Karkanias ("Karkanias") contacted LifeSpan's director of sales, Harjit Kullar, by telephone in Boston[7] to discuss having LifeSpan perform an IHC study of regions of the hypothalamus in mouse brains.[8]

LifeSpan personnel discussed with Mr. Karkanias the procedure for Phases 1 and 2 of the IHC study via emails and telephone calls.[9]  After the study procedure was determined, LifeSpan provided Mr. Karkanias with an initial quote for the cost of the study.[10]

In an email dated 4/24/06, Karkanias directed that the contracting entity be listed as Cytira, Inc.[11]  When the contract was agreed upon, the parties were listed as LifeSpan BioSciences, Inc. and

---

[4] *Id.*

[5] *Id.*

[6] Declaration of Harjit S. Kullar, ¶3.

[7] *Id.*

[8] The study would use IHC techniques to determine the distribution and localization of four different protein targets in normal and experimental mouse brain tissue specimens.  In Phase 1 of the study, two different antibodies would be applied to each of the four selected protein targets to determine which antibody worked best with each protein target.  In Phase 2, the best antibody for each protein target would be used to test the distribution and localization of the protein targets in 20 separate regions and subregions of the hypothalamus.  Declaration of Harjit S. Kullar, ¶'s 5, 8.

[9] Declaration of Harjit S. Kullar, ¶9; Declaration of Christine Roush, ¶2.

[10] Declaration of Harjit S. Kullar, ¶9.

[11] *Id.* ¶6.

Cytira, Inc.[12] whose address was stated to be 305 Madison Avenue, Suite 449, New York, New York 10165.[13] The Research Agreement is signed on behalf of Cytira by George Karkanias who listed his title as managing partner and the company name as Cytira.[14] Mr. Karkanias apparently signed the contract in New York, and LifeSpan signed the contract at its home office in Seattle.[15]

After the Research Agreement dated 10/30/06 was signed by the parties, LifeSpan received thirteen mouse brain specimens from the Jackson Laboratory in West Sacramento, California.[16] The study was to use three normal mouse brain specimens and three experimental mouse brain specimens from diabetic mice.[17] By an email dated 11/3/06, Mr. Karkanias said the seven extra specimens delivered to LifeSpan were for another study for which he was considering using LifeSpan.[18] Mr. Karkanias asked LifeSpan to hold these seven additional specimens until he made the decision to initiate the additional study.[19]

---

[12] The New York Department of State, Division of Corporations, possesses no record of Cytira as either a corporation or a limited liability company organized in New York or authorized to do business in New York as a foreign entity. Thus it is questionable whether the other party to the Research Agreement even has standing to initiate this action. Declaration of Kelli Wilcox ¶ 2.

[13] Declaration of Glenna Burmer, Ex. A.

[14] *Id.*

[15] Declaration of Glenna Burmer, ¶ 2.

[16] Declaration of Michelle Barbo, ¶ 3.

[17] *Id.*

[18] *Id.*

[19] *Id.*

After receiving the mouse brain tissue samples, LifeSpan undertook Phase I of the study.[20] LifeSpan completed performance of Phase I in January 2007.[21] LifeSpan advised Mr. Karkanias that a report of the Phase I results was available to view online.[22] The parties previously had arranged a procedure to permit Mr. Karkanias to use a password to gain access to LifeSpan's report online through LifeSpan's website.[23]

LifeSpan then undertook Phase II of the study.[24] LifeSpan had cut each of the six specimen mouse brains into three pieces on the assumption that the middle piece would include the

---

[20] Neither of the two antibodies used with one protein target, ERR Alpha, worked in Phase I so LifeSpan tried using a third antibody. The parties prepared Addendum No. 1 to include the additional cost to use this third antibody with ERR Alpha in Phase I. Declaration of Michelle Barbo ¶ 5. Mr. Karkanias apparently signed Addendum No. 1 in New York on 1/12/07, listing himself as managing partner for Cytira, Inc. LifeSpan signed Addendum No. 1 in Seattle on 1/15/07. Declaration of Glenna Burmer, ¶ 3 and Ex. B.

[21] Declaration of Michelle Barbo, ¶6.

[22] *Id.*

[23] *Id.*

[24] By email dated 1/26/07, Mr. Karkanias suggested dropping the protein target ERR Alpha from Phase II and proceeding only with the three other protein targets. Mr. Karkanias requested a reduced price for Phase II because LifeSpan had only obtained results for three of the four protein targets. Mr. Karkanias also asked if the cost of Phase II could then be reduced by 25%. LifeSpan agreed to a cost reduction for Phase II based on proceeding with only the three protein targets for which Phase I had indicated useful antibodies. By email dated 1/31/07, Mr. Karkanias approved the cost reduction and directed LifeSpan to proceed with Phase II, as limited to the three remaining protein targets. Declaration of Michelle Barbo, ¶ 7.

hypothalamus regions and subregions to be studied in Phase II.[25]  By email dated 2/15/07, LifeSpan explained to Mr. Karkanias that a few of the hypothalamic nuclei to be studied were located in the region where LifeSpan had cut the brain specimens.[26]  LifeSpan was unable to recover the missing regions located where the specimens had been cut.[27] [28] LifeSpan proceeded with Phase II as to the hypothalamic regions/subregions that could be identified.[29]  As an alternative, LifeSpan suggested using the seven additional mouse brain specimens to identify the missing regions and subregions.[30]  Mr. Karkanias did not respond to this suggestion.[31]  By an email dated 3/30/07, LifeSpan informed Mr. Karkanias that the final report for Phase II had been posted on LifeSpan's website and was available to view online.[32]  LifeSpan proposed a credit for the incomplete results.[33]  LifeSpan also

---

[25] Declaration of Debra Kapler, ¶ 2.

[26] Declaration of Michelle Barbo, ¶ 8.

[27] Declaration of Vasiliki Demas, ¶ 2; Declaration of Bruce Kulander, ¶ 2.

[28] Mr. Karkanias replied by an email dated 2/15/07 asking which regions were missing.  By an email dated 2/27/07, LifeSpan requested additional time because the pathologist was having difficulty listing the missing regions.  Declaration of Michelle Barbo, ¶¶'s 8, 9.  LifeSpan ultimately determined that in all six specimens, the VLH region was missing.  In addition, each of the six separate specimens had other variable regions that were not present.  Declaration of Vasiliki Demas ¶ 2; Declaration of Bruce Kulander ¶ 2.

[29] Declaration of Michelle Barbo, ¶ 8.

[30] Id.

[31] Id.

[32] Id. at ¶ 9.

[33] Id.

sent a compact disc to Mr. Karkanias in New York which contained the same final report posted by LifeSpan on its website.[34]

On 5/24/07 plaintiffs Karkanias Research, LLC d/b/a Cytira and George Karkanias a/k/a Cytira, Inc. filed a Summons and Complaint against LifeSpan BioSciences, Inc. under Case No. 601757/07. The Summons and Complaint were served on LifeSpan on 5/31/07. LifeSpan filed a Notice of Removal on 6/28/07 to remove this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 on the basis of diversity of citizenship of the parties.

## III. <u>ARGUMENT</u>

### A.  <u>PLAINTIFFS' CLAIMS MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.</u>

#### 1.  <u>General Requirements to Establish Long-arm Jurisdiction in a Federal Diversity Case.</u>

This Court lacks jurisdiction over the person of LifeSpan, which is incorporated in the State of Washington and has its principal place of business in Seattle, Washington. LifeSpan performed in Seattle, Washington the research study which is the basis for Plaintiffs' Complaint. LifeSpan did not transact any business within the state of New York. LifeSpan also did not have sufficient contacts with the state of New York regarding this transaction to satisfy federal due process requirements to permit this Court to assert personal jurisdiction over Defendant.

In order for this action based on diversity of citizenship between the parties to be maintained in the District Court, the Court must have personal jurisdiction over the parties. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). A district court sitting in a diversity case such as this may exercise personal jurisdiction to the same extent as courts of general jurisdiction of the state in which it sits. *Rescuecom Corp. v. Hyams*, 477 F. Supp. 2d 522, 527 (S.D.N.Y. 2006) (citing Fed. R. Civ. P. 4(k)(1)(A)). Federal courts engage in a two-part inquiry to determine whether the court can exercise personal jurisdiction over a defendant. First, the exercise of personal

---

[34] Declaration of Michelle Barbo, ¶ 9.

jurisdiction must be permissible under the laws of the forum state. *Id.* Second, exercising jurisdiction must satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (citing *Savin v. Rainier*, 898 F.2d 304, 306 (2d Cir. 1990)). To meet due process requirements, the defendant must have "minimum contacts" with the forum state and the exercise of personal jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *World-Wide Volkswagen Corp.*, 444 U.S. at 291-92. Only if a defendant has sufficient contacts with the forum state to justify the exercise of personal jurisdiction under state law do courts proceed to the due process analysis. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1946); *see, e.g., Metropolitan Life*, 84 F.3d at 568.

On a motion to dismiss for lack of personal jurisdiction, it is "well established" that "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *POSVEN, C.A. v. Liberty Mutual Ins. Co.*, 303 F. Supp. 2d 391, 396 (S.D.N.Y. 2004) (citation omitted). To defeat a motion to dismiss for lack of personal jurisdiction based solely on the pleadings, the plaintiff must demonstrate a prima facie case that personal jurisdiction exists. *Volkswagen A.G. v. Beach Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1981).

### 2.    Personal Jurisdiction Does Not Exist Under the New York Long-arm Statute.

### a.    There is No Personal Jurisdiction Under CPLR Section 301.

Plaintiffs' Complaint asserts that personal jurisdiction over Defendant exists under New York's Long-arm Statute, CPLR §§ 301 and 302. CPLR § 301 provides for general personal jurisdiction over "persons, property, or status as might have been exercised heretofore" – in other words, over a defendant who is "engaged in such a continuous and systematic course of doing business as to warrant a finding of its 'presence' in [New York]." *A.C.K. Sports, Inc. v. Dong Wilson Enters., Inc.*, 661 F. Supp. 386, 389 (S.D.N.Y. 1987) (citations omitted). *Accord: Semi Conductor Materials, Inc. v. Citibank Int'l PLC*, 969 F. Supp. 243, 245 (S.D.N.Y. 1997). A corporation is present and doing business in New York, with respect to any cause of action, if it does business in New York "not occasionally or casually but with a fair measure of permanence and

continuity." *Hoffnitz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (quoting *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)).    Factors traditionally considered in this analysis include whether the foreign corporation has a New York office; whether it solicits business in New York; the presence of bank accounts or other property in New York; and the presence of employees in New York. *Smit v. Isiklan Holding A.S.*, 354 F. Supp. 2d 260, 264-65 (S.D.N.Y. 2005).    LifeSpan does not meet any of these factors.    LifeSpan does not maintain an office in New York, does not solicit business in New York through such methods as print ads or direct mailings to New York companies, does not have bank accounts or other property in New York, and does not have any employees in New York.    Thus there is no basis for general jurisdiction over Defendant under CPLR § 301.

### b.    There is No Personal Jurisdiction Under CPLR § 302(a)(1).

In contrast to jurisdiction under CPLR § 301 based on a defendant's general presence in New York, CPLR § 302(a)(1) confers personal jurisdiction based on a non-domiciliary defendant's specific actions that allegedly gave rise to a cause of action for breach of contract.    CPLR § 302 (a)(1) states:

> Section 302.    Personal jurisdiction by acts of non-domiciliaries.
>
> (a)    Acts which are the basis of jurisdiction.    As to the cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through agent:
>
> 1.    transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . .

N.Y. CPLR § 302 (McKinney 2006).

In breach of contract cases where plaintiff is alleging specific personal jurisdiction exists under CPLR § 302(a)(1), New York Courts may assert jurisdiction over an out-of-state defendant pursuant to this long-arm provision only if (1) the defendant has transacted business in New York *and* (2) the cause of action arose out of the New York transaction of business, *McGowan v. Smith*, 52 N.Y.2d 268, 272-73, 419 N.E.2d 321 (N.Y. 1981))    "[T]he plaintiff must show a 'substantial relationship' or some 'articulable nexus' between the business transacted and the cause of action."

8

*Ainbinder v. Potter,* 282 F.Supp.2d 180, 187 (S.D.N.Y. 2003) (quoting *McGowan,* 52 N.Y.2d at 272). Plaintiff has the burden of establishing both jurisdictional predicates. *Armouth Int'l, Inc. v. Haband Co.,* 277 A.D.2d 189, 190, 715 N.Y.S.2d 438 (N.Y. App. Div. 2000). Failure to make either showing mandates dismissal of the Complaint for lack of personal jurisdiction. *Id.* at 190-91 (New Jersey clothing retailer's maintenance of an Internet website through which retail customers could purchase its products was insufficient to confer personal jurisdiction in New York, because Plaintiff failed to show a substantial relationship between retail activity on Defendant's website and the plaintiff's claim that the defendant breached a contract to purchase wholesale goods.). Even if Cytira is given every favorable inference, the Complaint fails to allege sufficient facts to establish either jurisdictional predicate.

          **i.**       **Plaintiffs Can Not Show Defendant Transacted Any Business Within New York.**

To establish that the defendant has transacted any business within New York, a plaintiff must show that the non-domiciliary defendant purposefully availed itself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. *Metro Air Serv., Inc. v. Penberthey Aircraft Leasing Co.*, 648 F. Supp. 1153, 1155 (S.D.N.Y. 1986). Not every contact with New York will be sufficient to confer personal jurisdiction. *See McKee Elec. Co. v. Rauland-Berg Corp.*, 20 N.Y.2d 377, 383, 229 N.E.2d 604, 607-08 (N.Y. 1967). The nature and quality of the New York contacts must be examined to determine their significance. *Benjamin Sheridan Corp. v. Benjamin Air Rifle Co.*, 827 F. Supp. 171, 175-76 (W.D.N.Y. 1993). "While electronic communications, telephone calls or letters, in and of themselves, are *generally not enough to establish jurisdiction*, they may be sufficient if used by the defendant deliberately to project itself into business transactions *occurring within New York State.*" *Credit Suisse Securities (USA) LLC v. Hilliard*, 469 F. Supp. 2d 103, 109 (S.D.N.Y. 2007) (emphasis added) (quoting *Deutsche Bank Sec., Inc. v. Mont. Bd. of Investments*, 797 N.Y.S.2d 439, 443 (N.Y. App. Div. 2005), *aff'd*, 850 N.E.2d 1140 (N.Y. 2006), *cert denied*, 127 S. Ct. 832 (U.S. 2006)). "*But* only in cases where the telephone call or *communication clearly shows* that the defendant intends to project

itself into ongoing New York commerce, such as where a defendant directly conducts market activity or securities transactions in New York over the telephone, do New York courts sustain jurisdiction based on [electronic communications] alone." *Id.* (second emphasis added) (internal quotations omitted). *Accord: Warck-Meister v. Lowenstein Fine Arts*, 7 A.D.3d 351, 352, 775 N.Y.S.2d 859 (2004) ("The various telephone, fax and e-mail communications upon which plaintiff relies, are not, under the circumstances herein, adequate transactional predicates for an assertion of jurisdiction under CPLR 302(a)(1)"). Communications by telephone, mail, internet, and e-mail do not constitute *purposeful availment* of the New York forum where, as here, the research activities contracted for are to be performed by LifeSpan outside of New York. *See, e.g., Schomann Int'l Corp. v. Northern Wireless, Ltd.*, 35 F. Supp. 2d 205, 210 (N.D.N.Y 1999); *Professional Personnel Mgmt. Corp. v. Southwest Medical Assocs., Inc.*, 216 A.D.2d 958, 958, 628 N.Y.S.2d 919 (N.Y. App. Div. 1999) *Success Mktg. Elec., Inc. v. Titan Sec., Inc.*, 204 A.D.2d 711, 612 N.Y.S.2d 451 (N.Y. App. Div. 1994); *Palace Exploration Co. v. Petroleum Dev. Co.*, 41 F. Supp. 2d 427, 433-34 (S.D.N.Y. 1998); *Broad Horizons, Inc.* v. *Central Crude Ltd.*, No. 94 Civ. 1593, 1994 WL 623075, *4-5 (S.D.N.Y. Nov. 9, 1994); *International Customs Assoc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261-63 (S.D.N.Y. 1995); *United States Theatre Corp. v. Gunwyn/Lansburgh Ltd. Partnership*, 825 F. Supp. 594, 596-97 (S.D.N.Y. 1993).

New York courts consider the following factors to determine whether an out-of-state defendant has "transacted business" in New York within the meaning of § 302(a)(1):

(1)     whether the defendant has an on-going contractual relationship with a New York entity;

(2)     whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with the parties to the contract regarding the relationship;

(3)     whether the contract is to be performed in New York;

(4)     whether the contract requires notices and payments to be sent to New York; and

(5)     whether the contract contains a New York choice of law clause.

*C.B.C. Wood Products, Inc. v. LMD Integrated Logistics Services, Inc.*, 455 F. Supp. 2d 218, 225-26 (E.D.N.Y. 2006) (citing *Sunward Elec., Inc. v. McDonald*, 362 F.2d 17, 22-23 (2d Cir. 2004)). No single factor is dispositive; a finding of personal jurisdiction must be based upon the totality of the circumstances. *Agency Rent A Car System, Inc. v. Grand Rent a Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996); *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202, 208 (E.D.N.Y. 2006).

> Since the mere existence of a contract with a New York corporation is not sufficient to constitute the transaction of business under Section [302(a)(1)] of the CPLR, the factors listed above must be applied to determine whether the [defendant] transacts business in New York.

*Burrows Paper Corp. v. R.G. Engr. Inc.*, 363 F. Supp. 2d 379, 385 (N.D.N.Y. 2005) (citations omitted).

In the present case, LifeSpan did not have an ongoing contractual relationship with Plaintiffs. The research study performed by LifeSpan was the first and only transaction between the parties. Second, LifeSpan did not come to New York to negotiate or execute the contract. All negotiations were conducted by LifeSpan from outside New York by telephone or e-mail. LifeSpan signed the contract in Seattle. LifeSpan also did not come to New York after executing the contract. Third, LifeSpan performed the entire research study in Seattle, Washington. No portion of the contract was performed in New York. Fourth, the Research Agreement did not provide for any notices, and no payments were to be sent to New York. Fifth, the Research Agreement did not contain any choice of law clause. Thus Plaintiffs can not show that the transaction meets any of the five stated factors for determining whether LifeSpan transacted business in the state of New York.

### ii. Plaintiffs Cannot Show Defendant "Contract[ed] Anywhere to Supply Goods or Services" in New York.

To determine whether an out-of-state defendant has "contract[ed] anywhere to supply goods or services in the state" within the meaning of § 302(a)(1), New York courts consider the following factors:

(1)    whether the purchase orders and other documents provide for shipment to New York;

11

(2)    whether the defendant collected New York sales tax in connection with the transaction;

(3)    whether the defendant solicited the contract in New York;

(4)    whether the defendant entered New York for purposes of performing the contract; and

(5)    any other factor showing the defendant voluntarily and purposefully availed itself of the privilege of transacting business in New York.

*Wickers Sportswear*, 411 F. Supp. 2d at 210.  *Accord:  CBC Wood Products*, 455 F. Supp. 2d at 226.

Under the five factor test set forth in *Wickers Sportswear*, LifeSpan's contacts with New York are insufficient for the Court to find that Defendant contracted to supply goods or services in the state of New York within the meaning of  CPLR § 302(a)(1).  The first four  factors have no application to LifeSpan whatsoever.  The fifth factor also does not create jurisdiction because LifeSpan's limited contacts with Cytira are an insufficient basis to conclude LifeSpan purposefully availed itself of the privileges and benefits of transacting business in New York.

First, LifeSpan conducted the research study in Seattle, Washington.  The final report was posted on LifeSpan's website to allow Cytira to access the report online using a password.  The CD sent to Cytira in New York merely contained a copy of the same information previously provided on LifeSpan's website.  Second, LifeSpan did not collect New York sales tax in connection with the study.  Third, LifeSpan did not solicit business from Cytira.  The initial contact between the parties occurred when Mr. Karkanias called Harjit Kullar at LifeSpan in late March 2006 by telephone to discuss having LifeSpan perform a research study.  Mr. Kullar was outside the state of New York when he discussed the proposed study with Mr. Karkanias by telephone and email.  Fourth, LifeSpan did not enter New York to perform the contract.  All of LifeSpan's services to conduct the study under the Research Agreement were performed in Seattle.  In addition, the mouse brain specimens and antibodies were ordered from laboratories in California.  LifeSpan provided all other necessary materials and equipment for the study.

With regard to the fifth factor of whether a defendant voluntarily and purposefully avails itself to the privileges of transacting business in New York, Courts in the Southern District of New

York have adopted a "Center of Gravity" test to determine whether communications by a non-domiciliary defendant to an in-state plaintiff, regarding services performed out-of-state, create jurisdiction over the defendant under the long-arm statute.  Where the "center of gravity" or the bulk of a transaction's performance is to take place outside New York  *(e.g.*, the performance of research services in Seattle), no purposeful availment or intention to do business in New York exists.  Therefore, if the ultimate transaction, contract, or activity by the Defendant takes place outside of New York, the "center of gravity" of the transaction is outside of New York, and the defendant's communications with an in-state plaintiff do not create a basis for personal jurisdiction under CPLR § 302(a)(1).  *See International Customs*, 893 F. Supp. at 1261-63 (no purposeful business activity in New York where substantial part of contract performed in Taiwan);  *United States Theatre*, 825 F. Supp. at 596-97 (defendant "did not intend to do business in New York" since his communications with New York plaintiff involved demolition of property in Washington, D.C.);  *Wilhelmshaven Acquisition Corp. v. Asher*, 810 F. Supp. 108, 113 (S.D.N.Y. 1993) (because the "center of gravity" of the transaction was the purchase of an oil refinery in Germany, all correspondence, telephone calls and even partial negotiations in New York did not project foreign defendant into New York forum);  *see also Mayes v. Leipziger*, 674 F.2d 178, 184 (2d Cir. 1982) (no purposeful activity where legal services for New York plaintiff were performed in California);  *Anderson v. Indiana Black Expo, Inc*., 81 F. Supp. 2d 494, 501 (S.D.N.Y. 2000) (performance of contract in Indiana did not involve purposeful business activity in New York);  *Palace Exploration*, 41 F. Supp. 2d  at 433-34 (gas and oil exploration in Oklahoma for New York plaintiff did not project foreign corporation into New York).

> *So far as we are aware, no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York, to perform outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.*

*Mayes,* 674 F.2d at 185 (emphasis added), *quoted in Nader v. Getschaw*, No. 99 Civ. 11556, 2000 WL 1471553, at *4 (S.D.N.Y. Sept.29, 2000).[35]

The "center of gravity" of LifeSpan's agreement to perform the research study for Cytira is Seattle, Washington where the entire study was performed. Under the "center of gravity" caselaw,

---

[35] In *Nader*, 2000 WL 1471553, at *1, a New York plaintiff contracted over the phone with the Wisconsin defendant to refurbish plaintiff's vintage automobile. Plaintiff arranged for his automobile to be shipped from California to Wisconsin. 2000 WL 1471553, at *1. Before the contract was completed, Plaintiff believing the restoration work was not being done properly requested his automobile back and an agent of the plaintiff retrieved the car from Wisconsin. *Id.*

Plaintiff sued defendant in New York for breach of contract, *inter alia. Id.* at *1. Plaintiff asserted that jurisdiction was proper in New York because "defendants initiated numerous telephone calls from Wisconsin to New York to discuss [Plaintiff's] car; defendants mailed invoices to New York for completed work; [Plaintiff] issued checks from New York State to defendants and subcontractors in Wisconsin; and [Defendant] made a visit to New York in 1997 or 1998." *Id.* at *3. In granting Defendant's motion to dismiss for lack of personal jurisdiction under CPLR § 301 (a)(1), the court applied the center of gravity test.

> Generally telephone and mail contacts do not provide a basis for jurisdiction under CPLR § 302(a)(1) unless the defendant projected himself by those means into New York in such a manner that he purposefully availed himself ... of the benefits and protections of its laws. In those cases in which courts have found that telephone and mail contacts with New York alone are sufficient to confer jurisdiction over the defendant, courts have found that the *center of gravity* of the business transacted was in New York.
> ....
> *So far as we are aware, no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York, to perform outside of New York such services as were performed, and who is alleged to have neglected to perform other services outside of New York.*

*Id.* at *4 (emphasis added) (internal quotations omitted).

Lifespan's correspondence, phone calls, and other electronic communications with the in-state plaintiff are insufficient to confer jurisdiction under CPLR § 302(a)(1). [36]  *See, e.g., Landau v. New*

---

[36] In *Broad Horizons,* 1994 WL 623075, at *2, a New York plaintiff brought a breach of contract action against defendant Central Crude, a Canadian company that contracted with plaintiff to provide mining exploration and development services in Canada.  Central Crude, like LifeSpan, did not have any offices, telephone listings, mailing addresses, agents, real property, personal property or bank accounts in New York.  1994 WL 623075 at *3.  Like LifeSpan, Central Crude did not advertise or sell its products or services in New York.  No visits or consultations, meetings or discussions were ever held in New York, and no employee or agent of Central Crude ever physically appeared in New York with respect to any aspect of negotiation, execution, performance or termination of the contract.  *Id*. at *3.  Under the contract, Central Crude was to perform services to explore and develop mining property  in Canada. *Id*. The contract did not require defendant to supply any goods or services in New York.  *Id*.  Similar to LifeSpan's communication of the results of its research to Cytira via website and mail, Central Crude sent "work reports" to Broad Horizons. *Id*. at 4.  However, the District Court concluded these communications were insufficient to establish jurisdiction under the "center of gravity" test.  *Id.* at *4-5.

   The district court rejected the New York plaintiff's arguments that the contract alone served as the transaction of business in New York and held that Central Crude did not intend to do any business in the State and simply communicated with a New York company in order to proceed with performance of the contract in Canada.  *Id*. The "center of gravity" of the transaction was to perform development services in Canada "and not a business relationship formed with a New York company through phone and mail contact from Canada."  *Id*.  Any communications from Canada with the New York plaintiff were an "insufficient basis for the court to find that defendant projected itself

*Horizon Partners, Inc.*, No. 02-Civ. 6802, 2003 WL 22097989, *5 (S.D.N.Y. Sep 08, 2003) (citing, *inter alia*, *Nader,* 2000 WL 1471553, at *4; *International Customs*, 893 F. Supp. at 1261-63).

While performing the study for Cytira in Seattle, LifeSpan did not purposefully avail itself of the privilege of transacting business in New York.  During the period from the spring of 2006 when LifeSpan was negotiating with Mr. Karkanias until the present date, LifeSpan did not and does not maintain any office or employees in New York.  Lifespan also did not and does not utilize any print ads or direct mailings to potential customers.  During the relevant period in 2006 and 2007, LifeSpan's website was and currently is the only source of information about LifeSpan available to potential customers in New York.  Under these facts, the Court should conclude that LifeSpan contracted to perform the research study in Seattle, Washington and did not contract to supply goods or services in the state of New York within the meaning of CPLR § 302(a)(1).

Various cases holding personal jurisdiction did not exist under CPLR § 302(a)(1) support the conclusion that LifeSpan did not contract to supply goods or services in New York.  In *Wickers Sportswear*, the District Court held that a North Carolina fabrics distributor did not contract to supply goods or services in New York and personal jurisdiction over the distributor did not exist pursuant to CPLR § 302(a)(1).  411 F. Supp. 2d at 209-11.  The distributor solicited a contract with a sportswear manufacturer in New York, but the distributor had shipped only samples and not actual goods to the manufacturer in New York.  *Id.* at 210.  The distributor also never traveled to New York to meet with the manufacturer.  *Id.*  On this basis, the court concluded that the distributor did not purposefully avail itself of the privilege of transacting business in New York.  *Id.* at 209-11.

In *C.B.C. Wood Products*, the defendant was a foreign corporation which maintained a

---

into the New York forum." *Id.* at *4.  Even though the plaintiff executed the contract in New York, and the contract provided that Central Crude was to make two payments and provide work reports to plaintiff, such factors were  irrelevant and insufficient to establish the transaction of business within the State.  *Id.*

warehouse at Elizabeth, New Jersey to which a Belgium export agency sent a shipment of plywood being purchased by the plaintiff, a New York corporation. 455 F. Supp. 2d at 221. The plaintiff and the defendant communicated by telephone and mail regarding the plywood being stored by defendant. The defendant was not responsible for transporting the plywood into New York. The defendant released some of the plywood to plaintiff. Later, the plaintiff informed the Belgium export agency that it could not complete payment of its invoice. In response, the Belgium export agency instructed the defendant not to release any additional plywood to plaintiff without its written confirmation. *Id.* The plaintiff sued the defendant claiming that defendant had exercised unlawful dominion and control over plaintiff's property. *Id.* at 222. The district court found that the plywood was not shipped by defendant into New York, the plywood was being maintained in defendant's warehouse in New Jersey until picked up by plaintiff or plaintiff's clients, neither party had addressed whether defendant collected New York sales tax and the invoices produced by plaintiff did not depict New York sales tax, there was no evidence that defendant had solicited the contract in New York, and there was no evidence that defendant had entered New York with regard to the present transaction. *Id.* at 226-27. Therefore, the district court held that the defendant was not subject to personal jurisdiction under CPLR § 302(a)(1) on the basis that the defendant had not supplied goods or services in New York. *Id.*

Likewise, in the present transaction, Mr. Karkanias initiated contact with LifeSpan. LifeSpan only had telephone and e-mail contacts outside New York with Mr. Karkanias in New York. LifeSpan did not come to the state of New York to negotiate or execute the Research Agreement or to perform the research study. LifeSpan posted the study results on its website so that Mr. Karkanias could access the results using a password and also sent a compact disc with duplicate study results to Mr. Karkanias in New York. Where the entire study was performed in Seattle, the delivery to Mr. Karkanias in New York of duplicate results of the study performed in Seattle does not in itself constitute a contract to supply goods or services in New York. Thus, the Court should determine that there is no long-arm personal jurisdiction under CPLR § 302(a)(1) over Defendant LifeSpan.

    **c.**        **Plaintiffs Cannot Establish Personal Tort Jurisdiction Under § 302(a)(3).**

Plaintiffs also assert that personal jurisdiction over LifeSpan exists under CPLR § 302(a)(3)

on the basis that Defendant negligently performed the research study.  Section 302(a)(3) states:

    (a)      Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

*   *   *

    (3)      commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

        (i)      regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

        (ii)     expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; . . . .

N.Y. CPLR § 302 (McKinney 2006).

Under both subsections (3)(i) and (3)(ii), the commission of a tortious act outside the state of

New York must cause injury to persons or property within the state of New York.  *Polansky v.*

*Gelrod*, 798 N.Y.S.2d 762, 763 (N.Y. App. Div. 2005).  Under New York case law, the situs of an

injury is the location of the original event which caused the injury, not the location where resultant

damages were subsequently incurred by the plaintiff.  *Id.* at 764.

"Assuming that Defendants' conduct constituted a tort, the situs of such a nonphysical

commercial injury is the place where 'the critical events associated with the dispute took place' and

not where the resultant monetary loss occurred."  *Id.* (citation omitted).  An injury does not occur

within the state simply because the plaintiff is a resident of New York.  *Stemcor USA v. Hyundai*

*Merchant Marine Co., Ltd.*, 386 F. Supp. 2d 229, 234 (S.D.N.Y. 2005).  The injury suffered in New

York must be direct and not remote or consequential.  Financial harm asserted by a New York

plaintiff does not create a basis for personal jurisdiction in New York if the events causing the

financial harm occur outside of New York.  *Polansky*, 798 N.Y.S.2d at 764.  In *Polansky*, the New

York Appellate Division concluded that personal jurisdiction over the defendant was not established

18

where the plaintiff failed to show that he had sustained any injury other than financial loss in New York. *Id. Accord: Mije Associates v. Haliburton Services*, 552 F. Supp. 418, 420 (S.D.N.Y. 1982). Likewise, in *Stemcor*, the District Court concluded that the New York Long-arm Statute did not confer admiralty jurisdiction over a Louisiana stevedoring company in an action brought in New York by a shipper for damages arising from the alleged mishandling in Louisiana of steel products. 386 F. Supp. 2d at 234. The District Court concluded that personal jurisdiction in New York did not exist as to the Louisiana stevedoring company based solely on the shipper's residence in New York because the alleged tortious acts did not cause injury to a person or property in New York. *Id.* The District Court stated, "The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York." *Id.*

In the present case, LifeSpan conducted the research study which is the basis for Plaintiffs' negligence claim entirely in Seattle, Washington. The financial consequences which Plaintiffs assert have occurred in New York based on Plaintiffs' residence in New York do not create personal jurisdiction over Defendant LifeSpan under CPLR § 302(a)(3). Any injury sustained by Plaintiffs in New York is a result solely of Plaintiffs' fortuitous location in New York. Thus, there is no basis for personal jurisdiction over Defendant LifeSpan under CPLR § 302(a)(3).

### 3. Defendant LifeSpan's Contacts With New York Fail to Meet the Due Process "Minimum Contacts" Requirement of *International Shoe*.

To show that the exercise of personal jurisdiction is proper, Plaintiffs also must demonstrate that Defendant LifeSpan had sufficient "minimum contacts in New York such that the maintenance of this action by Plaintiffs in New York does not offend 'traditional notions of fair play and justice.'" *Int'l Shoe*, 326 U.S. at 316. To establish that a court has personal jurisdiction over a non-domiciliary defendant, who is not subject to that forum's general personal jurisdiction, a plaintiff must establish that the forum has specific personal jurisdiction over the defendant. *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414-16 & nn.8-9 (1984). "Specific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit *arising out*

*of or related to* the defendant's contacts with the forum.'" *Drake v. Lab Corp. of Am. Holdings*, No. 02-1924, slip op. at 20, 2007 WL 776818, at \*10 (E.D.N.Y. Mar. 13, 2007) (quoting *Helicopteros*, 466 U.S. at 414 n. 8) (emphasis added). The minimum contacts test requires "in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). *Accord: Maranga v. Vira*, 386 F. Supp. 2d 299, 305 (S.D.N.Y. 2005). As discussed herein at Section 2.b.ii, *supra*, there is no *purposeful availment* of this forum where LifeSpan contracted with a New York company to perform services outside New York. Defendant LifeSpan has neither conducted business in New York nor invoked the benefits and protections of its laws.

Federal due process also requires the court to determine whether the prospect of defending a suit in the forum state comports with traditional notions of fair play and substantial justice. *Boehner v. Heise*, 410 F. Supp. 2d 228, 238 (S.D.N.Y. 2006) (citing *Int'l Shoe*, 326 U.S. at 316). The United States Supreme Court has stated:

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Calif. (Solana County)*, 480 U.S. 102, 113 (1982) (quotations omitted).

In the present case, LifeSpan had no direct contacts in the state of New York regarding the study performed for Cytira. LifeSpan will have numerous witnesses located in Seattle, Washington, who were involved with either the negotiation of the Research Agreement or the performance of the research study, whereas Mr. Karkanias is Cytira's primary and possibly sole fact witness. LifeSpan will be severely inconvenienced if it is forced to defend itself in the state of New York. Requiring LifeSpan to appear for trial in New York does not comport with traditional notions of fair play and would create a substantial injustice in violation of LifeSpan's due process rights. Therefore, the

requirements of federal due process dictate that Plaintiffs' claims against LifeSpan be dismissed for lack of personal jurisdiction.

**B.**   **THIS ACTION SHOULD BE DISMISSED FOR IMPROPER VENUE OR IN THE ALTERNATIVE, TRANSFERRED TO THE WESTERN DISTRICT OF WASHINGTON.**

      **1.**   **Under 28 U.S.C. § 1391(a), Venue for This Diversity Action is Improper in the Southern District of New York.**

Even if Lifespan is subject to personal jurisdiction in New York, the Southern District of New York is an improper venue for this diversity action, and the Court should dismiss this action on that basis. Pursuant to 28 U.S.C. § 1391(a), a civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided, be brought ***only*** in (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(a) (emphasis added). LifeSpan is the sole defendant. As a Washington corporation, LifeSpan is deemed to reside in Washington. This action could have been brought in the Western District of Washington. Thus 28 U.S.C. § 1391(a)(3) is not implicated here, and only § 1391(a)(1) and (2) apply to determine the proper venue for this case.

Section 1391(a)(2) requires a two-part inquiry. First, the court identifies the nature of the claims and the acts or omissions that allegedly give rise to those claims. Second, the court determines whether a substantial part of those acts or omissions occurred in the district where suit was filed. *See, e.g., Friedman v. Revenue Mgmt. of New York, Inc.*, 38 F.3d 668, 671-72 (2d Cir. 1994). For purposes of analyzing venue, "substantiality" is more qualitative than quantitative, and is determined by assessing the overall nature of the plaintiff's claims and of the specific events or omissions in the forum, and not by simply totaling the number of contacts with the forum. *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432-33 (2d Cir. 2005). When material acts or omissions

within the chosen forum bear a close nexus to the plaintiffs' claims, they are deemed substantial. *See, e.g., Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) (stating that substantiality requirement requires consideration only of the acts and omissions that "have a close nexus to the wrong").

In this case, the only connection between the events at issue and the forum state is the fact that the Plaintiffs reside in New York. As previously explained, LifeSpan negotiated and executed the Research Agreement outside of New York and performed the research study entirely in Seattle, Washington. Most of Defendant LifeSpan's activities in connection with this transaction occurred in the Western District of Washington. Where the significant events giving rise to Plaintiffs' claims occurred in the Western District of Washington, dismissal for improper venue is an appropriate remedy. *Friedman*, 38 F.3d at 672.

### 2. The Court Should Transfer Venue to the Western District of Washington Under 28 U.S.C. § 1404(a).

Should this Court determine that the Southern District of New York is a proper venue, the Court should utilize its discretion to transfer this action to the Western District of Washington pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Supplanting the old "forum non-conveniens" doctrine, the statute is designed to "prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Fuji Photo Film Co., Ltd v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 372-73 (S.D.N.Y. 2006) (internal quotation omitted); *see* 28 U.S.C.A. § 1404(a).

Transfer pursuant to Section 1404(a) is appropriate where the action is one that "might have been brought" in the proposed transferee district, and where transfer best serves the convenience of the parties and witnesses and the interests of justice. *Id.* Decisions on a motion to transfer are based on notions of convenience and fairness and determined on a case by case basis. *BBC Int'l Ltd. v. Lumino Designs, Inc.*, 441 F. Supp. 2d 438, 441 (E.D.N.Y. 2006). In *Kreisner v. Hilton*

*Hotel Corporation*, 468 F. Supp. 176 (E.D.N.Y. 1979), the District Court applied the following test in granting defendant's motion for transfer of venue from New York to Dallas where the plaintiff had sustained injuries in an assault.

> . . .[O]ur inquiry will be limited to determining whether the defendant has met its burden of clearly showing that litigation in the proposed transferee district would be more convenient and would better serve the interests of justice.
>
> In exercising its discretion on a motion to change venue, a court must weight the following criteria:   (1) convenience of the parties;  (2) convenience of  material witnesses; (3) availability of process to compel the presence of unwilling witnesses; (4) the cost of obtaining the presence of witnesses; (5) the relative ease of access to sources of proof; (6) calendar congestion; (7) where the events in issue took place; and (8) the interests of justice in general.
>
> *Although plaintiff's choice of forum is generally entitled to great weight in assessing the balance, there is a factor in this case which undermines plaintiffs' choice.  Since the operative facts underlying the alleged cause of action have no material connection whatsoever with this forum, plaintiffs' choice of forum is a less weighty consideration.*

468 F. Supp. at 177 (internal citations ommited)(emphasis added).

In the present case, Plaintiffs allege that LifeSpan breached the Research Agreement and was negligent by making errors in the study performed for Cytira.  The research study  in question was performed by LifeSpan entirely in Seattle.  Thus the events giving rise to Plaintiffs' alleged causes of action occurred in Seattle.   Most of the witnesses regarding the negotiation of the Research Agreement and LifeSpan's performance of the study are located in Seattle.  Plaintiffs' principal witness is Mr. Karkanias, who apparently was the sole contact person for Plaintiffs.  It will be much easier to bring Mr. Karkanias to Seattle rather than bring all of LifeSpan's witnesses to New York.

Moreover, the Research Agreement does not contain a choice of law provision.  In the absence of an effective choice of law in the Research Agreement, Washington law should apply.  In determining which state's law applies in a contractual dispute, New York courts have adopted the "grouping of contacts test" as defined by the Restatement of Conflict of Laws.  *O'Neill v. Yield House Inc.*, 964 F. Supp. 806, 809 (S.D.N.Y. 1997).  The Restatement (Second) Conflict of Laws

§ 188 discusses the principles to apply to determine applicable state law in the absence of an effective choice of law.

1.    The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated § 6.

2.    In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
      (a)    the place of contracting,
      (b)    the place of negotiating of the contract,
      (c)    *the place of performance*,
      (d)    the location of the subject matter of the contract, and
      (e)    the domicile, residence, nationality, place of incorporation and place of business of the parties.

      *These contacts are to be evaluated according to their relative importance with respect to the particular issue*.

3.    If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189 199 and 203.

Restatement (Second) Conflict of Laws § 188 (1971) (emphasis added).

LifeSpan performed the study under the Research Agreement in Seattle, Washington. LifeSpan's alleged breach of contract and tortious conduct occurred in Washington. Thus, Washington law should be applicable to determine Cytira's claims. This also would favor transferring the case to the Western District of Washington.

Based on the totality of circumstances, trial efficiency and the interests of justice weigh heavily in favor of a transfer to the Western District of Washington. Defendant LifeSpan, and most of the potential witnesses, are located in Seattle, Washington. Only Mr. Karkanias, the principal fact witness for Plaintiffs, resides in New York. A trial in Seattle would require much less travel overall then a trial in New York. Conducting the litigation in the District Court in Seattle clearly will be more convenient for the great majority of potential witnesses and better serve the interests of justice. *Kreisner*, 468 F. Supp. at 177. Plaintiffs' choice of forum is entitled to diminished weight when the operative facts have little connection to the chosen forum. *Saltire Indus., Inc. v. Waller*

*Lansden Dortch & Davis PLLC*, 331 B.R. 101, 106 (S.D.N.Y. 2005). Washington law should be applied to the transaction between Plaintiffs and Defendant. The interests of judicial economy would be better served by having a District Judge sitting in the Western District of Washington, who will already be intimately familiar with Washington law, apply that law in this action. Thus the Western District of Washington is the most appropriate venue for this action.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant LifeSpan BioSciences, Inc. respectfully requests that this Court grant its motion to dismiss or, in the alternative, to transfer this action to the Western District of Washington, at Seattle.

Dated:        New York, New York
              August 10, 2007

                        THELEN REID BROWN RAYSMAN
                        & STEINER LLP


                        By:   <u>*s/John Fedun*_____</u>
                              John Fedun

                        900 Third Avenue
                        New York, New York  10022
                        Direct Dial:  (212) 895-2125
                        Direct Fax:  (212) 829-2276
                        Attorneys for Defendant LifeSpan BioSciences, Inc.

Of Counsel:

Glenn R. Nelson, WSBA #5758
Oles Morrison Rinker & Baker LLP
701 Pike Street, Suite 1700
Seattle, WA  98101
(206) 623-3427
Fax:  (206) 682-6234