UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

KARKANIAS RESEARCH, LLC d/b/a/ CYTIRA,
and GEORGE KARKANIAS, a/k/a CYTIRA, INC.

                            Plaintiffs,

    -against-                                        **DECLARATION OF HARJIT S. KULLAR IN SUPPORT OF DEFENDANT LIFESPANS MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

LIFESPAN BIOSCIENCES, INC.,

                            Defendant   X
_____

I, Harjit S. Kullar, declare as follows:

1. My current residence address is 1957 Cassia Road, Apt. 201, Carlsbad, California 92011. I make this declaration in support of LifeSpan's Motion to Dismiss Complaint Or, In The Alternative, to Transfer Venue. I have personal knowledge and am competent to testify as a witness regarding the facts stated below.

2. I was employed by LifeSpan BioSciences, Inc. ("LifeSpan") as Northeast Director of Sales from March, 2004 to June 2006. I worked out of an office at my home in Boston, Massachusetts. I was responsible for negotiating service contracts to be performed by LifeSpan. During my employment with LifeSpan, I negotiated service contracts with two New York companies, Cytira, Inc, and a second New York company. As to both contracts, all of my communication was done by telephone or e-mail. I did not come to New York to meet with the customer, and I did not have any face-to-face meetings with the customer. While I was employed by LifeSpan, I did not travel to New York to meet with any potential customers to solicit their business.

3. In late March, 2006, George Karkanias ("Karkanias") first contacted me by telephone in Boston to discuss the performance by LifeSpan of a study of mouse brain tissue. I believe that Mr. Karkanias' telephone call to me was his first contact with LifeSpan. I had not previously contacted Mr. Karkanias for any reason.

4. When Mr. Karkanias first contacted me by telephone, he was working at the State University of New York. LifeSpan did not normally deal with universities because they generally did not have adequate funding to afford to pay the cost of LifeSpan's research services. Mr. Karkanias told me he had a new company through which he wanted to conduct biotechnology research. I had no prior knowledge of the existence of Mr. Karkanias' company, and thus I had no reason to initiate contact with Mr. Karkanias to solicit business for LifeSpan.

5. Mr. Karkanias wanted LifeSpan to study the distribution and localization of four different protein targets in normal and experimental mouse brain tissue specimens. Based on my communications with Mr. Karkanias, I developed an initial research plan. Christine Roush, LifeSpan's Director of Scientific Research, then became involved to design a study procedure.

6. In an e-mail dated 4/24/06, Mr. Karkanias directed that the contracting entity be listed as Cytira, Inc.

7. When Mr. Karkanias initially contacted me, Mr. Karkanias was in transition from his university job to his new company. It took a couple of months for Mr. Karkanias to decide exactly what he wanted LifeSpan to do in the study.

8. In Phase I of the study, two different antibodies would be applied to each of the four selected protein targets to determine which antibody worked best with each protein target. In Phase II, the best antibody for each protein target would be used to test the distribution and localization of the protein targets in 20 separate regions and subregions of the hypothalamus.

9. I discussed the study procedure for Phases I and II with Mr. Karkanias only via e-mails and telephone calls. After the study procedure was determined, I provided Mr. Karkanias with an initial quote of the cost for the study. Mr. Karkanias was the only person at Cytira with whom I had any contact regarding the research study.

P_GRN_DECL_KULLAR_062707_078570003[1].DOC

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___30th___ of July, 2007 at Carlsbad, California.

_____
Harjit S. Kullar