UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

KARKANIAS RESEARCH, LLC d/b/a/ CYTIRA,
and GEORGE KARKANIAS, a/k/a CYTIRA, INC.

                                        Plaintiffs,

        -against-                                        DECLARATION OF MICHELLE
                                                         BARBO IN SUPPORT OF
                                                         DEFENDANT LIFESPAN'S
LIFESPAN BIOSCIENCES, INC.,                              MOTION TO DISMISS COMPLAINT
                                                         OR, IN THE ALTERNATIVE, TO
                                        Defendant    X   TRANSFER VENUE
_____

I, Michelle Barbo, declare as follows:

1.      I am employed by LifeSpan BioSciences, Inc. ("LifeSpan"), as Director of Contract Administration.   My office address is 2401 Fourth Avenue, Suite 900, Seattle, Washington 98121.   I make this declaration in support of LifeSpan's Motion to Dismiss Complaint Or, In The Alternative, To Transfer Venue.   I have personal knowledge and am competent to testify as a witness regarding the facts stated below.

2.      LifeSpan performs immunohistochemistry (IHC) services for biotechnology and pharmaceutical companies.   LifeSpan uses molecular pathology and imaging technology techniques to test reactions of tissue samples to antibodies.   LifeSpan maintains a website to allow existing and potential customers throughout the world to obtain information and to contact LifeSpan.   During the relevant period in 2006 and 2007 (while LifeSpan was negotiating and performing a Research Agreement with Cytira, Inc.), LifeSpan did not and currently does not utilize any print ads or direct mailings to potential customers.   During the relevant period in 2006 and 2007, LifeSpan's website has been and currently is the only source of information about LifeSpan available to potential customers in New York.   During the relevant period in 2006 and 2007, LifeSpan also has not and does not maintain any office or employees in New York.

3.      After the Research Agreement dated 10/30/06 was signed by LifeSpan and Cytira, Inc., the mouse brain specimens to be used in the study were supplied to LifeSpan from the Jackson laboratory in West Sacramento, California.   The study was to use three normal

1

P-GRN DECL BARBO 062707 078570003

mouse brains and three experimental mouse brains from diabetic mice. LifeSpan received a total of 13 mouse brains from Jackson Laboratories. By an e-mail dated 11/3/06, George Karkanias said the extra specimens delivered to LifeSpan were for another study he was considering doing with LifeSpan. Mr. Karkanias asked LifeSpan to hold these additional specimens until he made the decision to implement the additional study.

4.    A total of eight antibodies, two for each of the four protein targets, were to be used in the research study. Two of the eight antibodies were to be supplied by Santa Cruz Biotechnology of Santa Cruz, California. For reasons unknown to LifeSpan, Santa Cruz Biotechnology will not accept orders for antibodies from LifeSpan. As a result, for any IHC services contract that requires antibodies from Santa Cruz Biotechnology, LifeSpan has the customer purchase the antibodies from Santa Cruz Biotechnology and then have the antibodies shipped to the customer who then ships the antibodies to LifeSpan. This procedure was followed regarding the research study requested by Mr. Karkanias. LifeSpan had Mr. Karkanias order the two antibodies to be provided by Santa Cruz Biotechnology. The two antibodies were shipped by Santa Cruz Biotechnology from Santa Cruz, California to Mr. Karkanias, who then shipped the antibodies to LifeSpan in Seattle.

5.    After LifeSpan received the mouse brain tissue samples, LifeSpan went ahead with Phase I of the study. In Phase I of the study, two different antibodies were to be applied to each of the four selected protein targets to determine which antibody worked best with each protein target. Neither of the two antibodies used with the protein target ERR Alpha worked, so LifeSpan tried using a third antibody. The parties prepared Addendum No. 1 to include the additional cost to use this third antibody with ERR Alpha in Phase I.

6.    LifeSpan completed performance of Phase I in January 2007. LifeSpan advised Mr. Karkanias that a report of the Phase I results was available to view online. The parties previously had arranged a procedure to permit Mr. Karkanias to use a password to gain access to LifeSpan's report online through LifeSpan's website.

P-GRN DECL BARBO 062707 078570003

7.      By an e-mail dated 1/26/07, Mr. Karkanias suggested dropping protein target ERR Alpha from Phase II and proceeding only with the three other protein targets. Mr. Karkanias requested a reduced price for Phase II because LifeSpan had only obtained results for three of the four protein targets. Mr. Karkanias also asked if the cost of Phase II could then be reduced by 25%. LifeSpan agreed to a cost reduction for Phase II based on proceeding with only the three protein targets for which Phase I had indicated useful antibodies. By an e-mail dated 1/31/07, Mr. Karkanias approved the cost reduction and directed LifeSpan to proceed with Phase II as limited to the three remaining protein targets.

8.      By an e-mail dated 2/15/07, LifeSpan explained to Mr. Karkanias that LifeSpan had cut each of the six specimen mouse brains into three pieces on the assumption that the middle piece would include the hypothalamus regions and subregions to be studied in Phase II. However, a few of the hypothalamic nuclei to be studied were located in the region where LifeSpan had cut the brain specimens. LifeSpan was unable to recover the missing regions located where the specimens had been cut. LifeSpan proceeded with Phase II as to the hypothalamic regions/subregions that could be identified. LifeSpan offered to adjust its price to account for this change. As an alternative, LifeSpan suggested using the seven additional mouse brain specimens to identify missing regions and subregions. Mr. Karkanias did not respond to this suggestion.

9.      Mr. Karkanias replied by an e-mail dated 2/15/07 asking which regions were missing. By an e-mail dated 2/27/07, LifeSpan requested additional time because the pathologist was having difficulty listing the missing regions. By an e-mail dated 3/30/07, LifeSpan informed Mr. Karkanias that the final report for Phase II had been posted on LifeSpan's website and was now available to view online. LifeSpan explained that in all six specimens, the VLH region was missing. In addition, each of the six separate specimens had other variable regions that were not present. LifeSpan proposed a credit for the incomplete results. LifeSpan also sent a compact disc to Mr. Karkanias in New York, which contained the same final report posted by LifeSpan on its website.

P-GRN DECL BARBO 062707 078570003

10.    Mr. Karkanias was the only person with whom LifeSpan's personnel in Seattle had any contact regarding the negotiation and performance of the research study.  LifeSpan is not aware of any other person besides Mr. Karkanias who was involved with the research study on behalf of Cytira.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___30th___ of July, 2007 at Seattle, Washington.


_Michelle Barbo_
Michelle Barbo