COX PADMORE SKOLNIK & SHAKARCHY LLP
Steven D. Skolnik (SS-1121)
630 Third Avenue
New York, NY 10017
(212) 953-6633
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

KARKANIAS RESEARCH, LLC d/b/a          **ECF CASE**
CYTIRA and GEORGE KARKANIAS
a/k/a CYTIRA, INC.,                    Case No. 07 CV 6113 (RJH) (MHD)

                         Plaintiffs,

        -against-


LIFESPAN BIOSCIENCES, INC.

                         Defendant.
-------------------------------------------------------x


### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO WASHINGTON


                              Steven D. Skolnik, P.C. (SS-1121)
                              COX PADMORE SKOLNIK
                               & SHAKARCHY LLP
                              Attorneys for Plaintiff
                              630 Third Avenue
                              New York, NY 10017
                              (212) 953-6633

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.............................................................................1

STATEMENT OF FACTS................................................................................5

ARGUMENT...............................................................................................8

PONT I. THE COURT HAS PERSONAL JURISDICTION OVER LIFESPAN....8

A.    New York Law Provides for Jurisdiction in Cases Such as This...................9

1.    This Court Has Jurisdiction Over Lifespan Under CPLR § 301..................10

2.    This Court Has Jurisdiction Over Lifespan CPLR § 302(a)(1)....................13

3.    This Court Has Personal Jurisdiction Over Lifespan CPLR § 302(a)(3).....19

a.    Lifespan's Negligence Caused Injury Within New York State....................19

b.    Lifespan's Derived Substantial Revenue From Interstate or International Commerce.......................................................................................20

B.    Jurisdiction Under CPLR §§ 301 and 302 Meets the Standards of Due Process............................................................................................20

POINT II VENUE IS PROPER IN NEW YORK...................................................21

POINT III VENUE SHOULD NOT BE TRANSFERRED TO WASHINGTON..22

CONCLUSION............................................................................................25

COX PADMORE SKOLNIK & SHAKARCHY LLP
Steven D. Skolnik (SS-1121)
630 Third Avenue
New York, NY 10017
(212) 953-6633
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

KARKANIAS RESEARCH, LLC d/b/a          **ECF CASE**
CYTIRA and GEORGE KARKANIAS
a/k/a CYTIRA, INC.,                    Case No. 07 CV 6113 (RJH) (MHD)

                        Plaintiffs,

        -against-

LIFESPAN BIOSCIENCES, INC.

                        Defendant.
--------------------------------------------------------x

### PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO WASHINGTON

Plaintiffs Karkanias Research, LLC d/b/a Cytira, a New York limited liability company,

and George Karkanias a/k/a Cytira, Inc., a New York resident, (collectively, "Cytira") submit this

memorandum of law in opposition to the motion of defendant LifeSpan Biosciences, Inc.

("Lifespan"), a Washington corporation, to dismiss the complaint for lack of personal jurisdiction,

to dismiss for improper venue or, in the alternative, to transfer the case to the Western District of

Washington.

### PRELIMINARY STATEMENT

Cytira commenced this action, seeking to recover damages that it has suffered as a result

of Lifespan's breach of contract and negligence. Lifespan had been hired by Cytira to assist it in a

project financed by a National Institute of Health ("NIH") grant. Lifespan's part in this project was to quantify estrogen receptors, using the techniques of immunohistochemistry, in the brains of certain normal and diabetic mice, and to provide Cytira with the results of its analysis.

Lifespan negligently performed the cutting of the brains of the mice, making it impossible to obtain certain data that were crucial to the project. Because of Lifespan's negligent actions, it was unable to comply with the requirements of its contract with Cytira. And the method in which Lifespan reported its data to Cytira did not comply with the requirements of its contract with Cytira.[1] As a result of Lifespan's breach of contract and negligent acts, Cytira's project was greatly hindered and the possibility of it obtaining further funding from the NIH for a follow-up study has diminished. In addition, Cytira had invested significant sums in harvesting the mice brains for the project; Lifespan's actions rendered that investment worthless. Finally, Cytira had made partial payment to Lifespan for data that were rendered worthless by Lifespan's negligent actions. Cytira commenced this action in the Supreme Court of New York, County of New York, against Lifespan, seeking to recover the damages it has suffered, based on claims sounding in breach of contract and negligence.

Lifespan removed this case to federal court based on the diversity of citizenship of the parties. It then made the instant motion, seeking the following relief:

- Dismissal of the action for lack of personal jurisdiction;

- Dismissal of the action for improper venue; or

- Transfer of this case to the District of Washington.

---

[1] Lifespan also did not complete the work within the time provided for in the contract.

2

As shown herein, Lifespan is entitled to none of the relief it seeks on this motion.

Lifespan's primary basis for seeking dismissal is lack of personal jurisdiction. It claims that its actions do not provide a sufficient basis for a New York court to assert personal jurisdiction over it under the New York long-arm statutes and that the "minimum contacts" necessary for personal jurisdiction under the United States Constitution do not exist.

Lifespan's assertion that it has not "done business" or "transacted business" in New York, as those terms are understood under the New York long-arm statutes, is based on a crimped reading of those statutes, which is not supported by the relevant case authority. As shown below, the cases clearly recognize that even parties who have not set foot in New York may still be subject to the jurisdiction of the state's courts under the long-arm statutes. Courts routinely recognize that, in this technological age, much business can be transacted in New York without any physical presence in the state and that jurisdiction can exist even if a party has never set foot in the jurisdiction.

Indeed, Lifespan has engaged in a number of activities that would subject it to the jurisdiction of the New York courts. These activities include:

- the solicitation of business in New York through an interactive website;
- the solicitation of business in New York through a Director of Sales responsible for the Northeastern states, including New York;
- the transaction of business with companies headquartered in New York, including two major pharmaceutical companies and Cytira;
- the participation in a major research project coordinated by Cytira in New York and funded by an NIH grant awarded to Cytira in New York;

3

- the delivery of data to Cytira in New York, as required by the contract; and
- requesting Cytira (in New York) to act as its agent to obtain certain reagents needed for Lifespan's work, having the reagents ordered by and shipped to Cytira in New York and then forwarding them to Lifespan in Washington.

These activities meet the requirements of CPLR §§ 301 (doing business in New York) and 302(a)(1) (transacting business in New York). In addition, to the extent that Lifespan acted negligently (as Cytira claims it did), jurisdiction is also proper under CPLR § 302(a)(3) (tortious act causing harm in New York state).

Lifespan has also contended that this case should be dismissed because venue is improper in New York under 28 U.S.C. § 1391(a). However, if the Court has personal jurisdiction over Lifespan – which it does – then Lifespan, for the purposes of venue, resides in New York. See, 28 U.S.C. § 1391(c). Accordingly, venue is proper in New York, contrary to Lifespan's contention to the contrary.

Finally, in the event that it does not prevail on its motion to dismiss, Lifespan seeks to have the case transferred to the Western District of Washington. However, Lifespan's position appears to be that this Court should shift the burden from the defendant, whose witnesses are in Washington, to the plaintiff, whose witnesses are in New York. In addition to George Karkanias, Cytira expects to call a number of New York witnesses involved in the NIH study, including Xinhe Liu, a technician working on the NIH grant, Dr. Ilir Topalli, a consultant on the project, and Dr. Peter Werner, a consultant on the project. Another consultant who might also be called is Dr. Richardson Fleuridor, who resides in Chicago, Illinois. The law does not allow a party to transfer venue merely to shift the inconvenience from one party to another.

4

As shown herein, Lifespan's motion is without merit and should be denied.

## STATEMENT OF FACTS

Plaintiff George Karkanias a/k/a Cytira, Inc. ("Dr. Karkanias") is a neuroscientist, having received his Ph.D. in neuroscience from Albert Einstein College of Medicine in 1993. He is the managing member of plaintiff Karkanias Research, LLC d/b/a Cytira ("Karkanias Research") since 2005. In addition, Dr. Karkanias is an adjunct assistant professor in the Department of Anatomy & Cell Biology at the State University of New York Downstate since 2005, and the endocrinology editor of Cellscience, a United Kingdom-based scientific journal since 2003. Declaration of George Karkanias ("Karkanias Dec.") ¶ 2.

Karkanias Research is a biomedical research and development company, dealing mostly with issues of neuroscience. Dr. Karkanias is the sole full-time employee of Karkanias Research. Karkanias Research hires outside technicians and consultants to assist Dr. Karkanias on various projects. Karkanias Dec. ¶ 3.

On or about August 1, 2005, Karkanias Research obtained an NIH grant to study diabetes-induced reproductive problems in women, and more specifically the role of insulin in maintaining reproductive function in diabetic women. Dr. Karkanias decided that certain tasks needed for the study would be farmed out to outside providers. Karkanias Dec. ¶ 4

To that end, Dr. Karkanias contacted The Jackson Laboratory ("Jackson"). Jackson has a strain of mice, some of which would spontaneously develop diabetes and some of which would not.[2] Dr. Karkanias entered into a contract with Jackson whereby Jackson would raise a series of

---

[2]      Some of the mice would also be in an intermediate state; these mice would be of no use in the initial phase of Cytira's study.

5

such mice, carefully monitoring their physical condition to ascertain which of the mice were diabetic and which were not. The brains from these two sets of mice would then be extracted for testing. Karkanias ¶ 5.

Next, Cytira needed to have the brains analyzed to find the levels of various estrogen receptors present. Such an analysis would be done through use of immunohistochemical methodologies. To find a company with expertise in the immunohistochemical analysis that he required, Dr. Karkanias searched on the internet and found Lifespan's interactive website. He contacted Lifespan via the e-mail link on the website, and Dr. Kullar, the Director of Sales - Northeast Region, then contacted him. Karkanias Dec. ¶ 6.

Dr. Kullar informed Dr. Karkanias that Lifespan was extremely experienced in the kind of work necessary for Cytira's study. He informed Dr. Karkanias that Lifespan worked with Pfizer, Inc., a pharmaceutical company with its headquarters in New York. He offered to come to New York to meet with Dr. Karkanias, but Dr. Karkanias did not see the need for a personal meeting and was perfectly happy to hash out the details of a contract over the phone and through e-mail. Dr. Kullar put Dr. Karkanias in touch with the pertinent scientists at Lifespan so that any questions or concerns he had could be addressed. Ultimately, Cytira and Lifespan entered into a detailed contract, dated October 30, 2006, under which Lifespan would do the analysis of the mice brains.[3] Lifespan and the employees involved with the Cytira project were aware that their work was part of a larger NIH-sponsored project that Karkanias Research was working on in New York. Karkanias Dec. ¶ 7.

---

[3]    As an initial matter, Lifespan asked Cytira to act as its agent and order certain necessary reagents, which were to be sent to Cytira in New York. Cytira would then forward the reagents to Lifespan in Washington. This was done because of some problem that Lifespan had with the company that manufactured the reagents. Karkanias Dec. ¶ 8

6

After the contract was executed, Malcolm An ("An"), a Lifespan employee, became Cytira's contact person. Mr. An informed Dr. Karkanias, before any analysis of Lifespan's data had been performed, that Lifespan had made a mistake in cutting the mice brains and would not be able to get counts of the estrogen receptors in certain regions of the brains. This was a critical mistake that could render the data actually obtained useless. Dr. Karkanias asked An to find out what regions of the brain could not be analyzed, so that he could determine whether any further work should be done, which An promised to do. Karkanias Dec. ¶ 9.

However, An's employment with Lifespan was subsequently terminated, and he never provided the information requested by Dr. Karkanias. Instead Dr. Karkanias was informed that (1) the work had been completed, (2) the data was available, and (3) Cytira should pay Lifespan the balance of the contract price. Karkanias Dec. ¶ 10.

Upon looking at the data, Dr. Karkanias ascertained that it was worthless. Not only were crucial brain regions unavailable because of Lifespan's error, but Lifespan had not even complied with the contract in conducting the proper type of data analysis for the regions that were not missing. The contract called for a count of the various estrogen receptors in each of the brain regions. It specified that "Lifespan will also calculate the number of positive cells in each region and subregion." Lifespan's analysis did not provide such a count but rather gave a much less rigorous and time-consuming "impression" of the results such as "blush" or "strong." Karkanias Dec. ¶ 11

Despite its blatant error in cutting the brains, resulting in a lack of usable data, and its failure to otherwise comply with the contract,[4] Lifespan continued to demand payment under the

---

[4]    Also, the work performed by Lifespan was not completed within the time parameters set out in the contract.

7

contract. In light of the damage it suffered as a result of Lifespan's breach of contract and negligence, Cytira commenced this action in the Supreme Court of the State of New York, County of New York, on or about May 17, 2007. Karkanias Dec. ¶ 12.

On or about June 28, 2007, Lifespan removed the case to federal court, and subsequently sent a letter to the Honorable Richard J. Holwell, seeking a pre-motion conference for a proposed motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer the case to the Western District of Washington, where Lifespan's principal place of business is located. In lieu of a conference, the Court set out a briefing schedule for the proposed motion. Karkanias ¶ 13.

This memorandum of law is submitted in opposition to the motion.

## ARGUMENT

### POINT I.

### THIS COURT HAS PERSONAL JURISDICTION OVER LIFESPAN

The first issue raised on this motion is whether Cytira has properly pleaded a basis for personal jurisdiction over Lifespan. As shown herein, such a basis has been properly pleaded.

When responding to a motion brought under Rule 12(b)(2), a plaintiff bears the burden of establishing that a court has jurisdiction over a defendant. However, before discovery, the plaintiff may meet this burden by making a prima facie showing of jurisdiction, by pleading, in good faith, legally sufficient allegations of jurisdiction. *See New Angle Pet Products, Inc. v. Willie's Golf Products, Inc.*, 2007 WL 1871345, at *2 (E.D.N.Y. June 28, 2007) (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998))(citations omitted). A court "construe[s] the pleadings and the affidavits [submitted on the motion] in plaintiff's favor." *PDK Labs, Inc. v.*

8

*Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997); *accord A.I. Trade Finance, Inc. V. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) (when considering affidavits and sworn declarations, "doubts are resolved in plaintiff's favor, notwithstanding a contravening presentation by the moving party").[5]

Determining whether personal jurisdiction exists is a two-pronged process. As the Court in *Schottenstein v. Schottenstein*, 2004 WL 2534155, at *5 (S.D.N.Y. Nov. 8, 2004), stated: "*First*, the court must determine whether the plaintiff has shown that the defendant is subject to personal jurisdiction under the forum state's laws. *Second*, the court must assess whether its assertion of jurisdiction pursuant to the forum state's laws comports with the requirements of due process." *Accord Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000), *cert. denied*, 532 U.S. 941 (2001); *Chaiken v. VV Publishing Corp.*, 119 F.3d 1018, 1027 (2d Cir. 1997).

The allegations set out in the complaint meet the burden required to make a prima facie showing of personal jurisdiction. Accordingly, the motion, to the extent it seeks dismissal on the ground of lack of personal jurisdiction, should be denied.

## A.    New York Law Provides for Jurisdiction in Cases Such as This

Cytira has alleged that it has jurisdiction over Lifespan, pursuant to CPLR § 301 (doing business in New York), § 302(a)(1) (transacting business in New York) and § 302(a)(3)(ii) (committing a tort outside of New York with the expectation that the act will cause injury to person or property within this state). As shown herein, this Court has jurisdiction over Lifespan

---

[5]    In that this action was originally brought in the Supreme Court of the State of New York, County of New York, where detailed allegations of jurisdiction are not required in a pleading, it is especially crucial for the Court to take into account the allegations in the accompanying declarations.

under all of these statutes.

**1.    This Court Has Jurisdiction Over Lifespan Under CPLR § 301**

"Section 301, as construed by the New York courts, permits a court to exercise jurisdiction over a foreign corporation on any cause of action if the defendant is "'engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction.'"" *Landoil Resources Corp. v. Alexander & Alexander Services*, 918 F.2d 1039, 1043 (2d Cir. 1990) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981)). Courts have recognized that the determination of whether a defendant's actions subject it to personal jurisdiction in New York State under CPLR § 301 is "necessarily fact sensitive," *Yurman Designs, Inc. v. A.R. Morris Jewelers, L.L.C.*, 41 F. Supp. 2d 453, 457 (S.D.N.Y. 1999), and such a determination must be made based on the totality of the party's contacts with the jurisdiction. *Ally & Gargano, Inc. v. Comprehensive Accounting Corp.*, 603 F. Supp. 923, 924 (S.D.N.Y. 1985).

Lifespan relies on a list of factors set out in *Smit v. Isikina Holding A.S.*, 354 F. Supp. 2d 260, 264-65 (S.D.N.Y. 2005) considered by courts in determining whether personal jurisdiction under CPLR § 301 exists. While asserting that the factors it culls from the *Smit* case support its view that this Court lacks personal jurisdiction over Lifespan, included in that list is the issue of whether the foreign defendant solicits business in the forum, something that Lifespan <u>does do</u>.

"Courts have . . . asserted jurisdiction under § 301 over entities that 'regularly solicit[] business [in New York] and engaged[] in some additional commercial activity within the state." *Schultz v. Ocean Classroom Foundation, Inc.*, 2004 WL 488322, at *4 (S.D.N.Y. Mar. 15, 2004)(quoting *Thomas Publishing Co. v. Industrial Quick Search, Inc.*, 237 F. Supp. 2d 489,

491 (S.D.N.Y. 2002)).  The key question of this test - commonly known as the solicitation plus doctrine – "is whether the defendant (or its agent) behaved in such a way so as to encourage others to spend money (or otherwise act) in a manner that would benefit the defendant." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 98 (2d Cir. 2000), *cert. denied*, 532 U.S. 941 (2001).

Lifespan is somewhat cagey in dealing with the issue of solicitation.  In reviewing the factors set out in *Smit*, Lifespan merely says that it "does not solicit business in New York through such methods as print ads or direct mailings to New York companies." Lifespan Br. at 8.  However, one can solicit business in a forum in ways other than through print ads and direct mailings.  It is undisputed that Lifespan has an interactive website through which it solicits business, and it is similarly undisputed that Lifespan had an employee, who served as Director of Sales - Northeast Region, who solicited business in New York.  Harjit Kullar was the Director of Sales - Northeast Region of Lifespan, whose job was to solicit business in the Northeastern states, including New York.  Dr. Kullar solicited Cytira's business.[6]  In addition, Lifespan's interactive website also serves as a conduit for communication between Lifespan and its clients.  The website allows a client to review the results of the tests performed by Lifespan on line.[7]

---

[6]     Cytira's initial contact with Lifespan was through its interactive website.  Dr. Kullar then followed up on the initial electronic solicitation and negotiated the contract between Cytira and Lifespan.

[7]     Although data can be retrieved on line, because the results that Cytira had requested were so extensive, Lifespan sent a copy of the data it generated to Cytira in New York on a compact disc.

11

Under the solicitation-plus doctrine, "once solicitation is found in any substantial degree very little more is necessary to a conclusion of 'doing business.'" *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir. 1970). Here, there is no doubt but that Lifespan did "more" to establish that it was "doing business" in New York. Lifespan has business relationships with major pharmaceutical companies headquartered in New York. In a press release that it posted on its website, it referred to its relationship with one of these companies, Pfizer Inc., as being that of a "partner" or a "collaborator," providing support for the proposition that it does business in New York.

Further, pursuant to its contract with Cytira, Lifespan was required to provide its data to Cytira in New York. While Lifespan tries to minimize the factor of sending the results of its testing to Cytira in New York by stating that it merely posted the results of the tests that it was hired to do on its secured website that Cytira could access via password, courts have been loathe to let defendants escape jurisdiction by utilizing technological means to prevent the need to physically enter a jurisdiction. As the court in *Chestnut Ridge Air, Ltd. v. 1260269 Ontario Inc.*, 13 Misc. 3d 807, 827 N.Y.S.2d 461 (Sup. Ct. N.Y. County 2006), stated:

> Given the advances in communications technology, jurisdiction pursuant to CPLR 301 may be established through non-traditional methods. Thus, an interactive website may constitute solicitation activity to support a finding of jurisdiction under CPLR § 301. This is consistent with the New York Court of Appeals' recognition that technological advances, such as e-mail and instant messaging, "enable a party to transact enormous volumes of business within a state without physically entering it." Accordingly (and although in the context of CPLR 302 long-arm jurisdiction), the Court in *Deutsche Bank* held that "when the requirements of due process are met . . . a sophisticated [business] knowingly entering our state whether electronically or otherwise to negotiate and conclude a substantial transaction is within the embrace of the New York long-

arm jurisdiction.

*Id.* at 809-10, 827 N.Y.S.2d at 464 (quoting ***Deutsche Bank Securities, Inc. v. Montana Board of Investments***, 7 N.Y.3d 64, 71, 850 N.E.2d 1140, 818 N.Y.S.2d 164 (2006)) (citations omitted). As the Court in ***Thomas Publishing Co. v. Indus. Quick Search, Inc.***, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002) held: "If [defendant] wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [defendant] to personal jurisdiction in New York."

And, of course, the website is not the sole contact that Lifespan has with New York. Lifespan, to comply with its contract with Cytira, transmitted a compact disc with the pertinent data on it to Cytira in New York. In addition, Lifespan had an employee, Dr. Kullar, whose job included soliciting business in the Northeastern states, including New York. Dr. Kullar solicited Cytira's business and negotiated the terms of the contract at issue in this case. And, as stated above, Lifespan does business with major pharmaceutical companies headquartered in New York. Put together, these contacts demonstrate that Lifespan does business within the meaning of CPLR § 301. Accordingly, this Court has personal jurisdiction over Lifespan under CPLR § 301.

**2.    This Court Has Jurisdiction Over Lifespan Under CPLR § 302(a)(1)**

CPLR § 302(a)(1) states that a New York court may exercise personal jurisdiction over a party who "transacts any business within the state or contracts anywhere to supply goods or services in the state." Unlike CPLR § 301, which confers general jurisdiction based on doing business in New York, i.e., business that need not be related to any cause of action in the case, CPLR § 302(a)(1) requires a transaction of business connected with a cause of action alleged in the complaint. Also unlike § 301, which requires a continuous and systematic course of activities

13

in New York, § 302(a)(1) requires only a single business transaction connected to the action to confer personal jurisdiction on the Court. *Fashion Fragrance & Cosmetics v. Croddick*, 2003 WL 342273, at \*4 (S.D.N.Y. Feb. 13, 2003).

Again, Lifespan attempts to evade jurisdiction by pointing to a list of factors considered by courts in determining whether business has been transacted in New York. Lifespan Br. 11-12 (quoting *Wickers Sportwear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 202, 210 (E.D.N.Y. 2006)). It claims that such factors establish that Lifespan did not transact business in New York, and that jurisdiction is improper in this Court. However, as the Court in *Schomann Int'l Corp. v. Northern Wireless, Ltd.*, 35 F. Supp. 2d 205, 208 (N.D.N.Y. 1999), noted: "Although these factors provide some guidance, courts examine the totality of the defendant's contacts within the forum state in determining whether personal jurisdiction over a defendant exists." Hence, restriction of the analysis to a set list of factors is improper. Looking at the totality of Lifespan's contacts alleged in the Complaint establishes that jurisdiction is proper in New York.

First, Lifespan used an interactive website as a means of solicitation of business. The website not only provides information about Lifespan, but also allows individuals to download its catalog and e-mail Lifespan's customer service department, its technical sales representatives and its investor relations department. Customers can retrieve data generated by Lifespan by signing on with a password provided to them by Lifespan.

Cytira first became aware of Lifespan through its interactive website. Dr. Karkanias was then contacted by Dr. Kullar, the Director of Sales - Northeast Region, who not only followed up on the initial solicitation, but negotiated the contract with him with the clear intent of injecting

14

Lifespan into the forum by engaging in business with a New York entity.[8] Indeed, Dr. Kullar's

job as Director of Sales was to engage in such business in New York and the other Northeastern

states. The contract between the parties provided that Lifespan send its data to Cytira in New

York, which it did by mailing a compact disc to Cytira in New York and, to the extent possible,

placing the data on its website, which data would only be accessible by Cytira in New York

through use of a password. And, Lifespan had Cytira act as its agent in obtaining certain

necessary reagents. Cytira ordered the reagents, which were shipped to it in New York; Cytira

then shipped the reagents to Lifespan in Washington.

The decision in *Colour & Design v. U.S. Vinyl Manufacturing Corp.*, 2005 WL

1337864 (S.D.N.Y. June 3, 2006) shows that personal jurisdiction is proper in New York under

circumstances such as those at bar. There, the Court held:

> The exercise of personal jurisdiction over defendants in this case
> does not offend due process. "Ordinarily . . . if jurisdiction is
> proper under the CPLR, due process will be satisfied because
> CPLR § 302 does not reach as far as the constitution permits."
> Here, minimum contacts requirements are satisfied by an actual sale
> and shipment of infringing products to an entity in New York, the
> maintenance of an interactive website of infringing products to an
> entity in New York, and relationships with sale representatives
> designated to serve customers in New York.

---

[8]     Lifespan attempts to argue that because the contract was negotiated over the phone and via the internet, the negotiations should not be considered a contact with New York. However, as noted in *Chestnut Ridge Air, Ltd. v. 1260269 Ontario Inc.*, 13 Misc. 3d 807, 827 N.Y.S.2d 461 (Sup. Ct. N.Y. County 2006), technology allows much business to be transacted in New York without both parties having to be physically in the state. To the extent that physical presence in the state was ever a requirement for negotiations to be considered a significant contact with the state, it appears that such is no longer the case. Indeed, it seems silly to argue that the negotiation of a contract, which ultimately leads to business with a company from New York, is more significant jurisdictionally if the negotiator set foot in New York. Whether or not there is a physical presence in New York, the party is still availing itself of the opportunity to obtain business from a New York person or entity. This is especially so when Dr. Kullar offered to come to New York during the negotiations, but was told by Dr. Karkanias that his presence was not necessary.

*Id.* at *2 (quoting *Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 90 (S.D.N.Y. 1997)). Jurisdictionally, this case is on all fours with *Colour & Design*. Lifespan has sent, both over the internet and by mailing a compact disc, data relating to the project that it was to have performed to Cytira in New York. Lifespan maintains an interactive website through which it communicated with Cytira. And Lifespan had a sales representative designated to serve customers in the Northeast, including New York.

In addition, Lifespan's use of its interactive website to communicate the results of the analysis that it was obligated to perform under the contract with Cytira establishes that it transacted business in New York. The Court in *Thomas Publishing Co. v. Industrial Quick Search, Inc.*, 237 F. Supp. 489 (S.D.N.Y. 2002), noted that "if [a party] does not want its website to subject it to personal jurisdiction [in New York], it is free to set up a 'passive' website that does not enable [it] to transact business in New York." Where a party sets up an interactive website, allowing it to transact business in New York, it may become "subject to personal jurisdiction [in New York] under CPLR § 302(a)(1)." *Id.* at 492. *See also Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565-66 (S.D.N.Y 2000) (where interaction is both significant and unqualifiedly commercial in nature, it rises to the level of transacting business under CPLR § 302(a)(1)). Hence, the interactive website through which Lifespan communicated its results to Cytira confers the Court with jurisdiction over Lifespan.[9] The interaction between Lifespan and Cytira over the internet was significant and unqualifiedly commercial. Lifespan

---

[9]     As noted above, in addition to posting data on the website that could be accessed by Cytira, Lifespan also sent a compact disc with the pertinent data to Cytira in New York.

provided the data that it had been hired to provide, to the extent possible, over the website.[10]

Lifespan asserts that a "center of gravity" test supports its proposition that this Court lacks jurisdiction over it. But the "center of gravity" test merely provides that communications from out of state by a non-domiciliary into New York state are insufficient to provide personal jurisdiction where there is little or no other connection with New York. Here, of course, as described above, there are numerous contacts with New York. Indeed, Lifespan was doing scientific analysis for a research project being coordinated out of New York, and sending the data of its analysis to Cytira in New York - both contacts strong enough to support jurisdiction in New York and which demonstrate that the "center of gravity" test is inapplicable to the case at bar.

The cases to which Lifespan gives significant space in its brief are totally inapposite to the case at bar. For example, Lifespan would have this Court find that no personal jurisdiction exists based on *Nader v. Getschaw*, 2000 WL 1471553 (S.D.N.Y. Sept. 29, 2000). That case, however, is distinguishable from the case at bar. Getschaw and his company, both located in Wisconsin, were hired by Nader to restore a car. The restoration was to be done in Wisconsin. Nader sued them in New York. Unlike the case at bar, Getschaw did not have an interactive website accessible from New York. Unlike the case at bar, Getschaw's company did not have an individual responsible for sales in the Northeastern states, including New York. Unlike the case at bar, the work performed by Getschaw and his company was not part of a larger project taking place in New York. Unlike the case at bar, materials needed for the work were not sent to Getschaw and his company from New York. And Getschaw and his company did not have to

---

[10]     Because of the amount and the nature of the data, Lifespan also sent Cytira a compact disc with the data because all of the data could not be viewed on the website.

17

ship the results of their work to New York; Nader's agent picked the car up in Wisconsin. Unlike the case at bar, the defendants had no contacts with New York, other than entering into a contract with a New Yorker. Hence, that case has no relevance to this case.

Nor does *Broad Horizons, Inc. v. Central Crude Limited*, 1994 WL 623075 (S.D.N.Y. Nov. 9, 1994) support Lifespan's position. In that case, a New York corporation (Broad Horizons) entered into a contract with a Canadian corporation (Central Crude) under which it would provide certain services relating to the exploration and development of Canadian mining property. The contract provided that the courts of the Province of Ontario would have exclusive jurisdiction with respect to any suits arising out of the contract.[11]  In *Broad Horizons*, the work performed by Central Crude, work relating to Canadian mining property, had no connection to New York. Here, as noted above, the work performed by Lifespan was part of a larger research project coordinated by and under the direction of Cytira in New York. Lifespan was aware that its work related to this larger project. Hence, the Court's decision in *Broad Horizons* is not relevant to the case at bar.

Lifespan's citation to *Wickers Sportswear, Inc. v. Gentry Mills, Inc.*, 411 F. Supp. 2d 202 (E.D.N.Y. 2006), is totally inapposite to the case at bar. There, the defendant, a North Carolina corporation, delivered dyed and finished fabrics to the plaintiff's facilities in New Hampshire, Tennessee or Ontario, Canada. The plaintiff sued in New York, where its principal place of business was located. The Court declined to exercise jurisdiction under these circumstances. Such circumstances are completely different from those at bar. Lifespan's

---

[11]     Although this fact is mentioned in the Background section of the decision, *see id.* at *1 & fn.1, it is not discussed in the court's analysis.

ultimate work product was sent to Cytira in New York, as required by the contract. Hence, jurisdiction should properly be exercised by a New York court.

Similarly, the court in *C.B.C. Wood Products, Inc. v. LMD Integrated Logistics Services*, 455 F. Supp. 2d 218 (E.D.N.Y. 2006) was faced with a circumstance where the defendant did not ship any goods into New York. Hence, the court held that there was no jurisdiction in New York. However, as noted above, the contract provided that Lifespan would send its data to Cytira in New York. Hence, the holding in **C.B.C.** is not applicable in this case.

Accordingly, to the extent that Lifespan's motion seeks dismissal on the ground of lack of jurisdiction, the motion should be denied because jurisdiction is proper under CPLR § 302(a)(1).

### 3.    This Court Has Personal Jurisdiction Over Lifespan Under CPLR § 302(a)(3)

CPLR § 302(a)(3)(ii) provides that a New York Court may exercise personal jurisdiction over a party who "commits a tortious act without the state causing injury to person or property within the state . . . if he expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." It is Cytira's position that Lifespan is subject to this Court's jurisdiction under this statute.

### a.    Lifespan's Negligence Caused Injury Within New York State

Lifespan was retained to do a crucial part of a research project for which Cytira had obtained funding from the NIH. Lifespan was aware that its work was a part of a larger project on the impact of diabetes on the reproductive functions in females, which was being conducted by Cytira in New York. Accordingly, any failure by it to provide the crucial data to Cytira would inevitably damage Cytira's research project in New York.

19

Lifespan, improperly slicing the brains of the mice provided to it by Jackson, rendered the data it obtained worthless. This negligence had a severe impact on Cytira's New York research, a fact of which Lifespan was aware (or should have been aware). Accordingly, Lifespan knew or should have known that its negligence would cause damage in New York.

**b.     Lifespan Derives Substantial Revenue
        From Interstate or International Commerce**

Lifespan derives substantial revenue from interstate and international commerce. The press releases found on its website (http://www.lsbio.com/about/newsroom/Articles.aspx) show that Lifespan deals with corporations throughout the country and abroad. Accordingly, the requirement that a company derive substantial revenue from interstate or international commerce contained in CPLR § 302(a)(3)(ii) is met in this case.

*     *     *

In that the criteria of CPLR § 302(a)(3) are met, this Court has personal jurisdiction over Lifespan in this case.

**B.     Jurisdiction Under CPLR §§ 301 and 302 Meets the Standards of Due Process**

Courts have held that "[i]t is well established that New York's long-arm requirement of 'doing business' is more restrictive than the requirement of minimum contacts." *Purdue Pharma L.P. v. Impax Laboratories, Inc.*, 2003 WL 22070549, at *4 (S.D.N.Y. Sept. 4, 2003); *accord New York Access Billing, LLC v. ATX Communications, Inc.*, 289 F. Supp. 2d 260, 265 (N.D.N.Y. 2003). Hence, the contacts that establish that a party is "doing business" in New York under CPLR § 301 also satisfy the requirements of due process.

The same analysis is true of jurisdiction under § 302. As the Court in *Topps Co. v. Gerrit*

20

*J. Verburg Co.*, 961 F. Supp. 88, 90 (S.D.N.Y. 1997), noted: "[I]f jurisdiction is proper under

the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the

constitution permits." *See also Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*,

450 F.3d 100, 105 (2d Cir. 2006) ("New York's long-arm statute does not extend to the full

reach permitted by the United States Constitution . . . .") Accordingly, to the extent that

jurisdiction is proper under CPLR § 302, it meets the requirements of the Due Process clause.

Lifespan seeks to conflate the requirements of due process with that of a motion to

transfer venue. However, the mere fact that its witnesses and documents are located in

Washington,[12] especially where Cytira's witnesses and documents are located in New York, is not

sufficient to render jurisdiction in New York unreasonable. *See Posh Pooch Inc. v. Argenti*,

2006 WL 435808, at *2 (Sup. Ct. N.Y. County Feb. 23, 2006) (holding that the fact that the

defendants' witnesses and documents were in Italy (while the plaintiffs' witnesses and documents

were in New York) did not render jurisdiction in New York unreasonable).

Accordingly, jurisdiction in New York is proper both under the New York long-arm

statutes and under the Due Process clause of the United States Constitution.

## POINT II.

### VENUE IS PROPER IN NEW YORK

Lifespan erroneously asserts that venue is improper under 28 U.S.C. § 1391(a), while

ignoring the import of § 1391(c), which provides that "[f]or purposes of venue under this chapter,

a defendant that is a corporation shall be deemed to reside in any judicial district in which it is

---

[12]    Lifespan mentions one witness who is a former employee and who lives in California. That individual is outside the jurisdiction of the Courts of both New York and of Washington and his or her existence does not render jurisdiction in New York improper.

21

subject to personal jurisdiction at the time the action is commenced." As shown above, this Court

has personal jurisdiction over Lifespan. Lifespan is a corporation. Accordingly, Lifespan, for the

purposes of venue, resides in New York. Hence, venue is appropriate under 28 U.S.C. §

1391(a)(1).

## POINT III.

### VENUE SHOULD NOT BE TRANSFERRED TO WASHINGTON

Lifespan, perhaps realizing that venue is appropriate in New York under 28 U.S.C. §

1391(a)(1), seeks, in the alternative, to transfer the venue of this action from New York to the

Western District of Washington.

> Relevant factors for the Court to consider in making this
> decision include: (1) the convenience of the parties; (2) the
> convenience of the witnesses; (3) the relative ease of access of
> proof; (4) the availability of process to compel attendance of
> unwilling witnesses; (5) the weight accorded to plaintiff's choice of
> forum; (6) a forum's familiarity with the governing law; (7) trial
> efficiency and (8) the interest of justice.

*Dwyer v. General Motors Corp.*, 853 F. Supp. 690, 692 (S.D.N.Y. 1994). These factors weigh

against granting the motion.

Lifespan virtually ignores the factor of Cytira's choice of forum. It is settled law that

"great weight is accorded to the plaintiff's choice of venue." ***Sirico v. RIH Acquisitions NJ,***

***LLC,*** 2006 WL 3370399 (E.D.N.Y. Nov. 20, 2006). It is only when other factors weigh strongly

in favor of a change in venue that a transfer should be made. As shown herein, Lifespan has made

no such showing warranting transfer of this case to the Western District of Washington.

Lifespan's primary basis for seeking transfer is that its witnesses and documents are

located in Washington. However, Cytira's documents and witnesses are located in New York. In

22

*Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998), as in this case, the defendant

sought to transfer venue based on the convenience of its witnesses. The plaintiff's witnesses

would have been inconvenienced by the change. The Court noted that the defendant was

"essentially attempting to shift the inconveniences to the plaintiff, which is not enough to compel

transfer." *Id.* at 331. *Accord Dwyer*, 853 F. Supp. at 693.

The availability of process to compel the attendance of unwilling witnesses, to the extent

that it is problem, is more of a problem for Cytira than for Lifespan. Lifespan has only identified

one witness not employed by Lifespan, Harjit Kullar. Dr. Kullar lives in California and would be

outside the subpoena power of either this Court or the Western District of Washington. Cytira's

witnesses, aside from Dr. Karkanias, are not employees of Karkanias Research. They would be

subject to the subpoena power of this Court, but not subject to the subpoena power of the

Western District of Washington.[13] Hence, this factor weighs against a transfer of venue.

Lifespan further suggests that Washington law should apply in this case, placing

determinative reliance on the place of its performance. However, Lifespan ignores the fact that its

contract with Cytira related to a larger research project taking place in New York, with respect to

which Lifespan's breach had a substantial negative impact. But even assuming that Washington

law would be the proper law to apply, this case involves claims of breach of contract and

negligence. Lifespan has not asserted that the law of the two jurisdictions is different in any

substantial respect, and it appears that there is no such substantial difference. *Compare Akins v.*

*Glens Falls City School District*, 53 N.Y.2d 325, 333, 424 N.E.2d 531, 535, 441 N.Y.S.2d 644,

---

[13]     Cytira also has one potential witness in Chicago, Illinois. That witness is not subject to the subpoena power of either jurisdiction, as is the case with Dr. Kullar.

648 (1981)(elements of a negligence claim under New York law) *with Markel American Insurance Co. v. Dagmar's Marina, LLC*, 161 P.3d 1029, 1031 (Wash. App. Div. I 2007) (elements of a negligence claim under Washington law); *compare Oppman v. IRMC Holdings, Inc.*, 2007 WL 151355, at *4 (Sup. Ct. N.Y. County Jan. 23, 2007) (elements of a contract action under New York law) *with* 29 Wash. Prac., Wash. Elements of an Action § 4:1 (2007)(elements of an action for breach of contract under Washington law). Hence, even if Washington law applies in this case, this factor should be given little weight.

Lifespan does not address, factor (3) – the relative ease of access of proof. That is understandable. Lifespan would have easier access to its proof in Washington; Cytira would have easier access to its proof in New York. Hence, this factor provides little guidance to the Court.

As to trial efficiency, there is no reason for this factor to have any weight on the determination of this motion. Lifespan has not provided any factual basis showing that the efficiency of the trial would be impacted by the venue. It merely states that because all its witnesses are in Washington, it would be more efficient for the case to be tried in the Western District of Washington. But, as shown above, Cytira's witnesses are in New York.

The interests of justice factor supports Cytira's position that this Court should not transfer this action to the Western District of New York. As noted above, Cytira has one full-time employee, Dr. Karkanias. His absence from New York, were this case to be tried in Seattle, would have a major impact on Karkanias Research's business. Lifespan, which has many employees, would not be so affected. In addition, Karkanias Research is a small limited liability company, while Lifespan is a much larger corporation with greater resources. The expense of trying the case in Washington would be a greater burden on the Plaintiffs than would be the

24

burden on Lifespan if the case were to be tried in New York.  Courts have held that "[w]here a disparity exists between the means of the parties, . . . the court may consider the relative means of the parties in determining whether to transfer." *Rates Technology Inc. v. UTT Corp.*, 1995 WL 16788 (S.D.N.Y. Jan.18, 1995).  Hence, the interests of justice weigh in favor of denying the motion to transfer this case to the Western District of Washington.

In that Cytira's choice of forum should be given substantial weight, and Lifespan's motion to transfer is merely an attempt to shift the inconveniences to Cytira, the motion, to the extent that it seeks a transfer of venue, should be denied.  Venue is proper in New York.

## CONCLUSION

For the reasons set out above, Lifespan's motion to dismiss this action on the grounds of lack of personal jurisdiction and improper venue should be denied.  In addition, there is no valid basis to transfer this case from this Court to the Western District of Washington, and Lifespan's motion, to the extent that it seeks such transfer, should be denied.

Dated: New York, New York
        September 10, 2007


Steven D. Skolnik, P.C. (SS-1121)
COX PADMORE SKOLNIK
 & SHAKARCHY LLP
Attorneys for Plaintiff
630 Third Avenue
New York, NY 10017
(212) 953-6633

25