SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------x
KARKANIAS RESEARCH, LLC d/b/a CYTIRA

                Plaintiff,

   - against --

LIFESPAN BIOSCIENCES, INC

               Defendant.
-----------------------------------------------------------x

Index No. 601663/07

Date Filed: 5/17/07

**SUMMONS**

Plaintiff designates New York County as the place of trial. Venue is based on Plaintiff's residence:
305 Madison Avenue, Suite 449
New York, NY 10165

    YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your Answer, or, if the complaint is not served with this summons to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated:   New York, New York
          May 17, 2007

                                COX PADMORE SKOLNIK
                                & SHAKARCHY LLP

                                By: _____
                                   Steven D. Skolnik, P.C.
                                Attorneys for Plaintiff
                                630 Third Avenue, 19th Floor
                                New York, NY 10017
                                (212) 953-6633

Defendant's Address:
2401 Fourth Avenue
Suite 900
Seattle, WA 98121

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------X
KARKANIAS RESEARCH, LLC d/b/a CYTIRA, INC.,

                            Plaintiff,

          -against-

LIFESPAN BIOSCIENCES, INC.,

                            Defendant.
-----------------------------------------------------------X

**COMPLAINT**

Index No: 601663/07

Plaintiff Karkanias Research, LLC d/b/a Cytira, and by its attorneys, Cox Padmore Skolnik & Shakarchy, LLP, as and for its Complaint against Defendant LifeSpan Biosciences, Inc. ("LifeSpan"), alleges as follows:

### THE PARTIES

1. At all relevant times, Karkanias Research, LLC was and is a limited liability company with its principal place of business located at 305 Madison Avenue, Suite 449, New York, New York 10165.

2. At all relevant times, Karkanias Research, LLC has been authorized to conduct business under the assumed name "Cytira."

3. Upon information and belief, at all times relevant hereto, LifeSpan was and is a foreign corporation, duly organized and existing under and by virtue of the laws of the State of Washington.

4. Upon information and belief, at all times relevant hereto, LifeSpan had and has its principal executive office located at 2401 Fourth Avenue, Suite 900, Seattle, Washington 98121.

5. At all relevant times hereto, George Karkanias ("Karkanias") has been the

1

Managing Partner of Cytira with the authority to enter into and negotiate contracts on its behalf.

6. At all times relevant hereto, Cytira has been in the business of utilizing molecular pathology, bioinformatics, and automated imaging technology to identify and validate targets for its biotechnology and pharmaceutical company customers in Europe, Asia, and North America.

7. Upon information and belief, at all times relevant hereto, LifeSpan has marketed its products and services in the United States, including New York, through the transmission and receipt of information on the internet over the World Wide Web.

## JURSIDICTION AND VENUE

8. Jurisdiction and venue in this Court is proper under New York Civil Practice Law and Rules §§ 302(a)(1) and (3).

9. In or about October, 2006, LifeSpan contracted with Cytira to supply and perform services for Cytira and to provide reports of the results of its services to Cytira in New York.

10. Through its various activities described in the General Allegations and the First Cause of Action, LifeSpan has transacted business in New York.

11. During the period October, 2006 to approximately March, 2007, as set forth in the General Allegations and the Second Cause of Action, LifeSpan committed tortious acts without New York, which caused injury to Cytira in New York.

12. Upon information and belief, LifeSpan regularly does or solicits business, in New York through an interactive website which allows customers to purchase antibodies, obtain quotes for immunohistochemistry (IHC) services, and view test results, in addition to other services, or derives substantial revenue from services rendered in this State.

13. Upon information and belief, in addition to its interactive website, LifeSpan has

2

engaged in continuous activity in New York by performing multiple services for other New York customers, including without limitation Pfizer, Inc. and Bristol-Myers Squib Company, both corporations having headquarters in New York.

14. LifeSpan reasonably should have expected that the tortious acts it committed to have consequences for Cytira in New York, and upon information and belief, LifeSpan derives substantial revenue from interstate or international commerce including its New York activities.

15. Venue is proper in New York County under CPLR § 503(a) in that Cytira resides in New York County.

## GENERAL ALLEGATIONS

16. At all relevant times, Cytira is and has been in the business of researching and developing life saving and life enhancing therapies to prevent, cure, and treat human disease.

17. Prior to October 30, 2006, George Karkanias of Cytira spoke with Harjit Kullar of LifeSpan about having LifeSpan perform specified work for Cytira utilizing IHC on brain samples from normal and diabetic mice that Cytira would send to LifeSpan in connection with a study being conducted by Cytira.

18. On or about October 30, 2006, Cytira and LifeSpan entered into a contract (the "Contract").

19. The Contract provided that "LifeSpan [would] perform tissue preparation, validation and mapping steps in order to isolate the 20 regions and sub-regions of the hypothalamus to be examined in the study."

20. The Contract further stated that the study would consist of two phases. In Phase I, "LifeSpan [would] characterize the activity of the eight (8) antibodies in IHC." In Phase II, "LifeSpan [would] determine the distribution and localization of the four (4) target proteins . . .

3

in ... twenty (20) regions and sub-regions of the hypothalamus."

21. Furthermore, the contract provided that "Phase I report [would] be delivered to the customer containing a summary of the results, digital images, and LifeSpan's recommendations...." The contract further provided that "LifeSpan [would] provide Cytira with a FULL TEXT report of Phase II results including DIGITAL IMAGES. In the report LifeSpan will provide a comprehensive analysis of the tissue sections and also perform a statistical analysis to show whether each region and sub-region from the treatment groups are different from each other, i.e. increase or decrease in expression of target proteins among the groups rather than just presence or absence of positive cells. LifeSpan will also calculate the number of positive cells in each region and sub-region resulting in an average across the animals in each group and hence there will be a mean +/- some variance across the control and experimental groups for each region and sub-region."

22. The Contract also provided that the "Study Period [would] be initiated upon LifeSpan receipt of a fully executed agreement AND all biological materials.... LifeSpan estimate[d] that the Study [would] be completed within eight (8) weeks of study initiation."

23. In or about April, 2006, Cytira received what purported to be a final report from LifeSpan.

24. The total cost of the project under the Contract was to be $32,324 plus the cost of commercial antibodies.

### AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract)

25. Plaintiff repeats and restates the allegations set out in paragraphs 1 through 24 hereof as if set out fully herein.

26. LifeSpan breached the Contract with Cytira by failing to complete the work within the estimated time (eight weeks) as specified in the Contract. LifeSpan did not complete the process until March 30, 2007, four months after LifeSpan received the biological materials from Cytira.

27. The report that LifeSpan sent to Cytira in purported compliance with the Contract was incomplete in that LifeSpan sent the results with missing regions.

28. LifeSpan breached the Contract with Cytira, inter alia, by failing to perform the procedures it agreed to perform in a correct manner in accordance with proper scientific standards, and by using an arbitrary rater scale and making notes of the staining intensity; the method LifeSpan used was less rigorous and less time consuming than what was agreed upon in the Contract.

29. As a result of LifeSpan's breach of the Contract, Cytira was not able to utilize its results.

30. Cytira has been damaged in the amount of $17,572 already paid to LifeSpan for the IHC services which were not adequately performed; $36,670 paid to The Jackson Laboratory to produce the mice and samples derived from the mice; $518.50 paid to Santa Cruz Biotechnologies, Inc. for procurement of antibodies for the IHC process; and approximately $183,000 consequential damages, in addition to delay in work aimed at providing relief to diabetic patients.

31. The damage sustained by Cytira are the natural and probable consequence of the breach by LifeSpan. Furthermore, the damages were within the contemplation of the parties at the time of the Contract.

32. As a result thereof, Cytira has been damaged in an amount not less than

5

$237,760.50.

## AS AND FOR A SECOND CAUSE OF ACTION

33. Cytira repeats and restates the allegations set out in paragraphs 1 through 30 hereof as if fully set out herein.

34. LifeSpan owed Cytira the duty to act with the skill and care appropriate for a laboratory engaged in IHC.

35. LifeSpan breached the duty it owed to Cytira by negligently handling and destroying the samples sent to it by Cytira.

36. LifeSpan's negligent handling and destruction of the samples resulted in loss of key brain regions rendering the data useless to Cytira. LifeSpan's error resulted in the destruction of valuable scientific samples that were produced both at the cost of animal life, in addition to, the significant financial expense. LifeSpan's breach has caused delay in work aimed towards providing relief to diabetic patients and has set Cytira's goals back by approximately one and a half years.

37. As a result of the foregoing, Cytira has been damaged in an amount not less than $237,760.50.

WHEREFORE, Cytira demands judgment on each of its two causes of action in an amount not less than $237,760.50, together with interest, the costs and disbursements of this action and such other and further relief as is just and proper.

Dated: New York, New York
May 17, 2007

Steven D. Skolnik
COX PADMORE SKOLNIK &
SHAKARCHY, LLP
Attorneys for Plaintiff
630 Third Avenue, 19th Floor
New York, N.Y. 10017
(212) 953-6633

C:\Documents and Settings\apayne\My Documents\Summons and Complaint 041107-Karkanias.doc