UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————X
KARKANIAS RESEARCH, LLC d/b/a/
CYTIRA, and GEORGE KARKANIAS,
a/k/a CYTIRA, INC.                                      07-CV-06113 (RJH)

                                                        Assigned to: Hon. Richard J. Holwell,
                                                        U.S.D.J.

                            Plaintiffs,

     -against-                                          DEFENDANT LIFESPAN'S
                                                        REPLY MEMORANDUM IN SUPPORT
                                                        OF MOTION TO DISMISS COMPLAINT
                                                        OR, IN ALTERNATIVE, TO
LIFESPAN BIOSCIENCES, INC.,                             TRANSFER VENUE

                            Defendant    X
——————————————————————


                                                        THELEN REID BROWN RAYSMAN
                                                        & STEINER LLP
                                                        John Fedun
                                                        900 Third Avenue
                                                        New York, New York  10022
                                                        Direct Dial:  (212) 895-2125
                                                        Direct Fax:  (212) 829-2276

                                                        *Attorneys for Defendant LifeSpan BioSciences, Inc.*

Of Counsel:

   Glenn R. Nelson, WSBA #5758
   Oles Morrison Rinker & Baker LLP
   701 Pike Street, Suite 1700
   Seattle, WA  98101
   (206) 623-3427
   Fax:  (206) 682-6234

## **TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| I. | LIFESPAN IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK ......................................................................................................... 1 |
| 1. | PERSONAL JURISDICTION DOES NOT EXIST UNDER THE NEW YORK LONG ARM STATUTE ........................................................ 1 |
| a. | LifeSpan is not Subject to Personal Jurisdiction under CPLR § 301 Because LifeSpan does not Engage in Substantial and Continuous Solicitation of Business Together with Other Activities of Substance in New York. ......................................................... 1 |
| i. | LifeSpan did not Engage in Substantial Solicitation of Business from a Permanent Location within New York ................ 1 |
| ii. | LifeSpan Does Not Engage in Other Activities of Substance in New York ......................................................... 2 |
| b. | LifeSpan is not Subject to Personal Jurisdiction under CPLR § 302(a)(1) Because LifeSpan did not Transact Business in New York Substantially Related to Cytira's Cause of Action ............................. 3 |
| i. | LifeSpan's Posting of Study Results on lsbio.com did not Constitute 'Transacting Business in New York' ...................... 3 |
| 1. | Study Results Posted on lsbio.com were not Accessible in New York. ..................................................... 4 |
| 2. | Cytira's Cause of Action is not Substantially Related to LifeSpan's Internet Activity. ............................. 5 |
| ii. | Communications between Cytira and LifeSpan do not Constitute "Transacting Business in New York" ........................... 7 |
| c. | LifeSpan is not Subject to Personal Jurisdiction under CPLR § 302(a)(3)(ii) ................................................................................ 9 |
| II. | THE COURT SHOULD TRANSFER THE VENUE OF THIS ACTION TO THE WESTERN DISTRICT OF WASHINGTON ............................................... 9 |

# I. LIFESPAN IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK

## 1. PERSONAL JURISDICTION DOES NOT EXIST UNDER THE NEW YORK LONG ARM STATUTE

Citing CPLR § 301 and 302(a)(1), Cytira argues that long arm jurisdiction over LifeSpan is proper on the theory that LifeSpan has "solicited business" and "transacted business" in New York through its website, "lsbio.com." However, since LifeSpan is not engaged in continuous, permanent, and substantial activity in New York, and did not transact any business in New York substantially related to Cytira's cause of action through its website, Cytira's arguments for long arm jurisdiction must fail.

### a. LIFESPAN IS NOT SUBJECT TO PERSONAL JURISDICTION UNDER CPLR § 301 BECAUSE LIFESPAN DOES NOT ENGAGE IN SUBSTANTIAL AND CONTINUOUS SOLICITATION OF BUSINESS TOGETHER WITH OTHER ACTIVITIES OF SUBSTANCE IN NEW YORK.

Cytira argues that LifeSpan "solicits business" in New York, and that therefore LifeSpan is "doing business" in New York for the purposes of CPLR § 301. Specifically, Cytira argues that LifeSpan is subject to § 301 jurisdiction under the "solicitation-plus" test. Under this standard, if **"solicitation is substantial and continuous, and defendant engages in other activities of substance in the state,** then personal jurisdiction may be found to exist." *Overseas Media, Inc. v. Skvortsov*, 407 F.Supp.2d 563, 569 (S.D.N.Y. 2006) (citations omitted; emphasis added). Courts have described this standard as "stringent," requiring that the foreign defendant "does business in New York not occasionally or casually, but with a fair measure of permanence and continuity…. at the time the action is brought." *Id.* at 567-68 (quotations omitted). Cytira's argument necessarily fails because LifeSpan's activities meet neither the "solicitation" element nor the "plus" element of the "solicitation-plus" test.

#### i. LifeSpan did not Engage in Substantial Solicitation of Business from a Permanent Location within New York

Under the "solicitation-plus" theory of jurisdiction, "it is [ ] essential that [Defendant's] 'solicitation in New York ... [first] rise to the level of 'substantial solicitation' needed to trigger the 'solicitation-plus' rule in the first instance.'" *Id.* at 569 (citation omitted). "[T]**he solicitation must**

1

**be substantial and done from a permanent location within the state for a party asserting jurisdiction to invoke this doctrine."** *Schultz v. Ocean Classroom Foundation, Inc.*, 2004 WL 488322, at *4 (S.D.N.Y. March 15, 2004) (emphasis added) (citing *Pellegrino v. The Stratton Corp.*, 679 F.Supp. 1164, 1170 (N.D.N.Y.1988); *Overseas*, 407 F.Supp.2d at 571 ("[w]hen a defendant has no permanent locale in the state, and makes no substantial and continuous sales or shipments in the state, it is highly unlikely that it will be found to be 'doing business.' This is true not only under CPLR 301, but as a matter of due process.").

It is undisputed that LifeSpan maintains no office, mailing address, property, or bank account in New York, and that it has no employees in New York. Cytira contends that LifeSpan solicits business in New York through its website, lsbio.com, and through Harjit Kullar, LifeSpan's Northeast sales director based in Massachusetts. While LifeSpan disputes these contentions,[1] even assuming them to be true, LifeSpan's activities would still not establish § 301 jurisdiction because the alleged solicitation was not "done from a permanent location within [New York]." *See Schultz*, at *4.

### ii. LifeSpan Does Not Engage in Other Activities of Substance in New York

Second, Lifespan does not "engage[ ] in other activities of substance in [New York]" as required to establish jurisdiction under CPLR § 301 pursuant to the "solicitation-plus" test. *Overseas Media*, 407 F.Supp.2d at 569. "[M]ere solicitation of business within the state does not constitute the transaction of business within the state, unless the solicitation in New York is supplemented by business transactions occurring in the state." *Treeline Inv. Partners, LP v. Koren*, 2007 WL 1933860, at *3 (S.D.N.Y. July 3, 2007) (citation omitted). To determine if the foreign defendant is engaged in other activities of substance in New York, "[c]ourts will frequently look to the percentage of [the foreign defendant's] revenue attributable to New York business" to determine if the

---

[1] LifeSpan never solicited Cytira's business. As Cytira admits, George Karkanias initiated contact with LifeSpan.

2

"plus" prong of the "solicitation-plus" test is met. *Overseas*, 407 F.Supp.2d at 569. "[W]here the total amount of revenue derived from customers in New York is, for instance, 5% or less of a foreign defendant's revenues, courts in this district have found that the foreign defendant is not 'doing business' in New York." *Schottenstein v. Schottenstein*, 2004 WL 2534155, at *11 n.114 (S.D.N.Y. Nov. 8, 2004). From the beginning of 2005 through the first quarter of 2007, LifeSpan generated less than 1% of its total sales revenue from customers located in New York. (Declaration of James W. Shepperd, Sec. 3, at p. 2.) LifeSpan's revenue from New York represents far less than 5% of its total income. *Id.* Therefore, LifeSpan is not 'doing business' in New York. *See, Overseas Media*, 407 F. Supp. 2d at 569 (collecting N.Y. cases).[2]

### b. LIFESPAN IS NOT SUBJECT TO PERSONAL JURISDICTION UNDER CPLR § 302(A)(1) BECAUSE LIFESPAN DID NOT TRANSACT BUSINESS IN NEW YORK SUBSTANTIALLY RELATED TO CYTIRA'S CAUSE OF ACTION

> To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction. Courts look to "the totality of the defendant's activities within the forum," to determine whether a defendant has "transact[ed] business" in such a way that it constitutes "purposeful activity" satisfying the first part of the test.

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (internal citations omitted).

#### i. LifeSpan's Posting of Study Results on lsbio.com did not Constitute 'Transacting Business in New York'

Cytira argues that "LifeSpan's use of its interactive website to communicate the results of the research study performed for Cytira establishes that LifeSpan transacted business in New York."

---

[2] Cytira claims that LifeSpan engages in other activities of substance in New York because it has performed studies for Pfizer Inc., which, it is alleged, has its corporate headquarters in New York. These studies were entirely performed in the state of Washington at the request of Pfizer labs located in Massachusetts and Connecticut, not in New York. (Reply Declaration of Harjit Kullar, sec. 7, at p. 2.) These studies have no relation to New York and, therefore, do not support a finding of long arm jurisdiction. *See Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 WL 1500896, at *3 (S.D.N.Y. 2005).

3

(Cytira's Memo at 16.). Cytira's argument fails because the results of the Research Agreement were not accessed by Cytira in New York through LifeSpan's website. In addition there has been no showing that any business allegedly transacted over LifeSpan's website is related to the subject matter of Cytira's claims against LifeSpan.

### 1. Study Results Posted on lsbio.com were not Accessible in New York.

> [A] website's interactivity may be useful for analyzing personal jurisdiction under section 302(a)(1), but only insofar as it helps to decide whether the defendant "transacts any business" in New York-that is, whether the defendant, through the website, "purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."
> ....
> [The] posting of [ ] material on a website accessible in New York does not, without more, constitute 'transact[ing] business' in New York for the purposes of New York's long-arm statute.

*Best Van Lines,* 490 F.3d at 250, 252 (citations omitted). LifeSpan was not "transacting business in New York" when LifeSpan posted the research study results on its website. Indeed, the study results posted on lsbio.com were only accessible from a computer linked to the Comcast internet provider's address in New Jersey given to LifeSpan by George Karkanias in order to obtain a password from LifeSpan to download information from the website. (Declaration of Ron Carlile, sec. 2, at pp. 1-2.) The LifeSpan-Cytira Research Agreement states at page 1:

> Cytira will supply LifeSpan with a list of IP addresses that will be allowed access to the web interface to view the online [study result] reports. LifeSpan will use a combination of IP addresses with usernames and passwords to ensure the security of the confidential information published through the LifeSpan online interface.

(*See* Research Agreement attached as Exhibit A to Declaration of Glenna Burmer.) George Karkanias provided only one IP address to LifeSpan, 68.45.40.126, and therefore could only access the study results from a computer linked to that IP address. (Declaration of Ron Carlile, sec. 2, at pp. 1-2.) IP address 68.45.40.126 is located in New Jersey and is tied to internet service provided by Comcast, which does not provide internet service anywhere in New York City. *Id.* Since the study results on

LifeSpan's website were only accessible in New Jersey,[3] the downloading of the study results from LifeSpan's website cannot be considered "transacting business" in New York because the activity was not purposefully directed at New York. *See, e.g., Bill-Jay Mach. Tool Corp. v. Koster Indus., Inc.*, 816 N.Y.S.2d 115, 117 (N.Y. App. Div. 2006) (holding that a California defendant did not engage in purposeful activity within New York where the California defendant knew it was contracting with New York company, the plaintiff, but shipped the contracted for goods to New Jersey, not New York).

### 2. Cytira's Cause of Action is not Substantially Related to LifeSpan's Internet Activity.

> If the defendant is transacting business in New York, the second half of the section 302(a)(1) inquiry asks whether the cause of action "aris[es] from" that business transaction or transactions. "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there is a substantial relationship between the transaction and the claim asserted.' "

*Best Van Lines*, 490 F.3d at 249; *see Avecmedia v. Gottschalk*, 2004 WL 1586411, at *7 (S.D.N.Y. July 14, 2004) (rejecting personal jurisdiction on cross-claim because the cross-claimee's contact with New York was not substantially related to the cross-claim; "[T]he present suit does not arise out of these contacts. [The present] suit would still exist [even without claimee's connection with New York.]"). In the case at bar, Cytira would still have a cause of a action against LifeSpan even if LifeSpan did not post the study results on LifeSpan's website because the alleged breach of contract occurred during the performance of the study, not in the transmission of the study results.[4] Thus,

---

[3] LifeSpan's research indicates plaintiff George Karkanias, Cytira's sole employee, has an address in Irvington, New Jersey. Comcast provides internet service in Irvington. (Declaration of Ron Carlile, sec. 2, at pp. 1-2.)

[4] For similar reasons, the compact-disc sent by LifeSpan to Cytira is not "substantially related" to the alleged breach of contract claim.

5

LifeSpan's alleged "transaction of business" through its website falls short of a "substantial relationship" as required by 302(a)(1).[5]

In addition, any interactive aspects of LifeSpan's website are not substantially related to Cytira's claims. While LifeSpan acknowledges that it does allow customers to purchase products such as antibodies through its website, this commercial activity bears no relation whatsoever to Cytira or its claim. In *Armouth*, the non-domiciliary defendant maintained an Internet website through which customers could purchase its retail products. *Armouth*, 715 N.Y.S.2d at 439. The plaintiff, a clothing wholesaler, commenced the suit in New York claiming that the defendant breached the contract when it refused the goods delivered and failed to pay the price agreed to under the contract. *Id.* The court granted defendant's motion to dismiss for lack of personal jurisdiction, holding that "plaintiff failed [ ] to sustain its prima facie burden of establishing a substantial relationship between the Internet retail activity and the defendant's alleged breach of contract to purchase wholesale goods." *Id.*

Similar to *Armouth*, where the defendant conducted retail sales but not wholesale sales through its website, LifeSpan sells certain antibodies at retail but does not sell research services through its

---

[5] In the only case we are aware of in which transmittal of "computer files" by website to customers in another state was deemed sufficient for long arm jurisdiction, the computer files *themselves* were the actual product that was sold to the customers. *See Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1261 (6th Cir. 1996) (jurisdiction asserted over defendant who sold "software files" via the internet in the forum state). Here, any "computer files" accessible on LifeSpan's website merely helped *facilitate* the purchase of services, which were performed only in Washington, and were not, in and of themselves, the products purchased. *Strong v. Retail Credit Co.*, 552 P.2d 1025, 1029 (Colo. Ct. App. 1976) ("We do not view the report based upon the investigation as a product."); 2 L. Anderson, *Anderson on the U.C.C.* § 2-105:91 (contract to conduct investigations and make reports is a contract for services, not the sale of goods).

6

website. (Reply Declaration of Michelle Barbo, sec. 5, at p. 2.) A customer must make direct contact with a representative of LifeSpan to negotiate the terms of a research agreement. *Id.* Cytira never made any purchases on LifeSpan's website. Cytira's transaction with LifeSpan involved research services only. Cytira's cause of action has no relation to LifeSpan's internet retail activity. Therefore, the existence of LifeSpan's website is insufficient to establish § 302(a)(1) jurisdiction because there is no substantial relationship between the website and Cytira's cause of action. *Armouth*, 715 N.Y.S.2d at 439; *see also Reese v. Kings Park, Inc.* No. 3751/06, at 3 (Sup. Ct. Nassau Co., 2007) (citations omitted), *available at* http://decisions.courts.state.ny.us/10jd/nassau/decisions/index/index_new/robbins/2007jan/003751-06.pdf (Finding no need for the court to examine the 'interactivity' of the website, "because there has been no showing that any business allegedly transacted over [Defendant's] website is related to the subject matter of the present action, as required.").

      **ii.**    **Communications between Cytira and LifeSpan do not Constitute "Transacting Business in New York"**

It is well-settled law that contacts through telephone calls, mail, and facsimile are insufficient to confer personal jurisdiction. *See, e.g., Int'l Customs Assocs. v. Ford Motor Co.*, 893 F.Supp. 1251, 1261 (S.D.N.Y. 1995); *Kimco Exch. Place Corp. v. Thomas Benz, Inc.*, 824 N.Y.S.2d 353, 354 (N.Y. App. Div. 2006). This court recently held that

> Telephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction .... **[W]here a defendant's "contacts with New York consist of telephone calls, fax transmissions, and correspondence in connection with the negotiation of a contract that has a center of gravity well outside the state," there is no personal jurisdiction under C.P.L.R. § 302(a)(1).**

*Digital Lab Solutions, LLC v. Stickler*, 2007 WL 700821, at *3 (S.D.N.Y. Mar. 7, 2007) (emphasis added; internal citations omitted). In *Digital Lab,* this court examined CPLR § 302(a)(1) long arm jurisdiction based upon e-mail communications between a domiciliary and a non-domiciliary. "There were dozens, if not hundreds, of e-mails between [the non-domiciliary defendant] and [the New York plaintiff]...." *Id.* Based on a 'center of gravity' analysis, the Court held these communications did not

7

amount to 'transacting business in New York' since the correspondence was in connection with contract negotiations for business to be performed in California. *Id.* at *4; *see also Nader v. Getschaw*, 2000 WL 1471553, at *4 (S.D.N.Y. Sept. 29, 2000) ("In those cases in which courts have found that telephone and mail contacts with New York alone are sufficient to confer jurisdiction over the defendant, courts have found that the 'center of gravity' of the business transacted was in New York."); *Landau v. New Horizon Partners, Inc.*, 2003 WL 22097989, at *5 (S.D.N.Y. Sept. 08, 2003) (collecting cases). Similarly, there is no question the contract for LifeSpan to perform research services had its 'center of gravity' in Seattle, Washington, where all of the research services were performed by LifeSpan, and not in New York. (*See* Def. Memo at 12-15).[6] Therefore LifeSpan's correspondence, phone calls, and other electronic communications with Cytira are insufficient to confer jurisdiction under CPLR § 302(a)(1).[7]

---

[6] Cytira's contention that the "center of gravity" test is inapplicable here is completely inapposite to the cases cited in LifeSpan's original memorandum.

[7] Cytira also asserts in passing and without citation to any authority that Cytira served as LifeSpan's agent for the procurement of two antibodies. This assertion is totally conclusory and without any basis in fact. Cytira obtained two of the antibodies directly from a supplier of Cytira's choosing and then provided those antibodies to LifeSpan for use in the research. (Declaration of Michelle Barbo, sec. 3, pp. 1-2.) LifeSpan in no way controlled Cytira's purchase of the two antibodies nor did LifeSpan pay for or invoice anyone for the antibodies. It was merely a matter of convenience that compelled Cytira to obtain the antibodies on its own accord and "accommodation is not agency." *U.S. v. Provoo*, 124 F. Supp. 185, 188 (S.D.N.Y. 1954), *rev'd on other grounds* 215 F.2d 531 (2d Cir. 1954). Moreover, there can be no agency relationship where the alleged principal has no right of control over the alleged agent. *Krom v. Sharp & Dohme*, 180 N.Y.S.2d 99, 101, (App. Div. 1958).

### c. LIFESPAN IS NOT SUBJECT TO PERSONAL JURISDICTION UNDER CPLR § 302(A)(3)(II)

CPLR § 302(a)(3)(ii) states:

> "[A] court may exercise personal jurisdiction over any non-domiciliary ... who ... commits a tortious act without the state causing injury to person or property within the state ... if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."

As discussed previously, the situs of Cytira's injury from LifeSpan's alleged negligent performance of the research study is in Washington where the study was performed, and not in New York. (Def. Mem. at 18-19.) Cytira now contends that LifeSpan's research study was part of a larger NIH funded project conducted by Cytira in New York, and that LifeSpan's negligent work caused injury to Cytira's NIH funded study. However, there is no reason to believe this new information changes the analysis because the situs of the injury is still where the "critical events" causing the injury occurred. *Polansky v. Gelrod*, 798 N.Y.S.2d 762, 764 (N.Y. App. Div. 2005). Furthermore, LifeSpan denies that it was ever made aware at anytime by Cytira that its work was part of a larger NIH funded project in New York. (Reply Declaration of Harjit Kullar, sec. 5, at pp. 1-2; Reply Declaration of Malcolm An, sec. 3, at pp. 1-2; Reply Declaration of Michelle Barbo, sec.2, at pp. 1.) Cytira offers no evidence to support the allegation that LifeSpan should have been aware of a larger NIH funded project. (*See* Declaration of George Karkanias, secs 4, 7, at pp. 2, 3.)

### II. THE COURT SHOULD TRANSFER THE VENUE OF THIS ACTION TO THE WESTERN DISTRICT OF WASHINGTON

> To obtain a transfer of venue, the movant must establish (1) that "the action to be transferred is one that might have been brought in the district to which the movant seeks to have it transferred," and (2) that the "convenience of parties and witnesses and the interests of justice favor transfer."

*Age Group Ltd. ("AGL") v. Regal Logistics, Corp.*, 2007 WL 2274024, at *2 (S.D.N.Y. Aug. 8, 2007) (citations omitted). Clearly this action could be brought in the Western District of Washington. Therefore, LifeSpan will only address the "the balance of convenience and fairness." In assessing "balance of convenience and fairness" courts consider several factors:

9

(1) the locus of the operative facts; (2) the convenience of the witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) the trial efficiency and the interests of justice based on the totality of circumstances.

*Id.* at *3. The court in *AGL v. Regal Logistics*, *supra*, granted a motion to transfer venue from the Southern District of New York to the Western District of Washington under an extremely similar fact pattern. Following the analysis applied by the *AGL* court, even if there is personal jurisdiction in New York, the Court should transfer this action to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a).

In *AGL*, the plaintiff (AGL) was a New York corporation involved in manufacturing, importing, wholesaling, and distributing wearing apparel. In 2004, AGL contracted with the defendant (Regal), a Washington corporation operating a warehouse distribution center in Fife, Washington, to provide provided warehouse services to AGL in Washington. The majority of communications regarding the agreement between AGL, and Regal took place electronically. *Id.* at *1. In May of 2006, AGL filed a complaint alleging that Regal failed to perform properly the services promised to AGL. *Id.* Regal then moved to dismiss the case for lack of personal jurisdiction, improper venue, and in the alternative, to transfer the action to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1404(a). *Id.* The *AGL* court transferred the action to the Western District of Washington pursuant to 28 U.S.C. § 1404(a), without addressing the long arm jurisdiction issues. *Id.* at *5. In determining that a transfer of venue was appropriate, the court considered two factors to be very significant, "the locus of the operative facts" and the "convenience of witnesses." *Id.* at *3-4.

> To determine where the locus of operative facts lies, courts look to "the site of events from which the claim arises." In accordance with the Southern District's traditional treatment of motions to transfer contract disputes, this Court will determine where the locus of operative facts lies by considering where the contract was negotiated, formed, performed, and allegedly breached, giving particular weight to the site of performance.

10

*Id.* at *3. The *AGL* court then concluded:

> [F]or purposes of contract negotiation and formation, New York and Washington are, collectively, the loci of operative facts.... **Washington is clearly the locus of operative facts regarding the performance and alleged breach of the parties' agreement. The parties' agreement was to be performed primarily in Washington..... This factor weighs in favor of transfer....** Moreover, as AGL's primary claims center on Regal's alleged failure of performance and not on any matters relating to the formation or negotiation of the contract, **the Court places particular emphasis on the locus of operative facts relating to the performance and alleged breach of the contract, as compared to that of the negotiation and formation of the contract.**

*AGL*, at *3-4. (internal citations and footnotes omitted; emphasis added).

The *AGL* court also considered whether venue in New York or Washington would be more convenient for the witnesses. *Id.* at *4. Because Regal had more witnesses in Washington than AGL had in New York, the court found "the convenience of party and non-party witnesses weigh[ed] heavily in favor of transfer [to Washington]." *Id.*

For the same reasons that the *AGL* court granted a transfer of venue, the Court should transfer venue in this case. Just as in *AGL*, Washington and New York collectively are the loci of the facts for contract negotiation and formation, since the agreement between LifeSpan and Cytira was negotiated and signed in both states. Most importantly, the locus of the facts surrounding performance and alleged breach of the agreement is clearly in Washington since LifeSpan carried out the research project at its Washington home office. Moreover, just as in *AGL*, Cytira's claims center around the performance and the alleged breach, not the formation or negotiations of the contract. Thus, greater weight should be given to the locus of the operative facts relating to performance and the alleged breach. "Washington is the locus of operative facts regarding the performance and alleged breach of the contract. This factor weighs in favor of transfer." *AGL*, at *4.

In addition, Washington is the more convenient forum for the potential witnesses in this case. Cytira lists five potential witnesses, four of whom allegedly reside in New York (Pl. Mem. at 4). However, for three of these witnesses, Cytira provides no information as to how they are relevant to the causes of action. Furthermore, Cytira provides no information as to how the testimony of the three

11

consultants on the NIH project would differ. "Without further information, the Court must find that these witnesses, holding identical positions and knowledge, will offer cumulative testimony and so the convenience of both will not be considered." *AGL,* at *5 n.3. Of its non-party witnesses, Cytira only presents evidence that Mr. Topalli is subject to subpoena in New York.

On the other hand, LifeSpan has identified nine witnesses[8] it would likely call at trial, seven residing in Washington, and one in California. All nine LifeSpan witnesses would clearly benefit from the transfer to the Western District of Washington. LifeSpan has appropriately provided declarations from all of these potential witnesses, giving general information as to what their testimony will cover. *See AGL*, at *5. Furthermore, two of LifeSpan's non-party witnesses[9] would be subject to subpoena in Washington. LifeSpan clearly has more relevant witnesses who would benefit from the transfer to Western District of Washington. Therefore, "the convenience of party and non-party witnesses weighs heavily in favor of transfer." *AGL*, at *5.

Cytira incorrectly argues that the relative means of the parties weighs against transfer of venue. "Where proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered." *Orb Factory, Ltd. v. Design Science Toys*, 6 F.Supp.2d 203, 210 (S.D.N.Y. 1998). Cytira's unsupported allegation as to the relative means of the parties does not support a finding on this factor in favor of Cytira, especially since both Cytira and LifeSpan are companies, not

---

[8] Bruce Kulander, Malcolm An, Michelle Barbo, Harjit Kullar, Christine Roush, Glenna Burmer, Debra Kappler, Vasiliki Demas, James Shepperd.

[9] Bruce Kulander (who is an Independent Contractor, not an employee of LifeSpan) and Malcolm An (a former employee of LifeSpan) are non-party witnesses who both live in Seattle. *See, e.g., Royal Ins. Co. of America v. Tower Records, Inc.*, 2002 WL 31385815, *5 (S.D.N.Y. October 22, 2002); *Zeta-Jones v. Spice House*, 372 F.Supp.2d 568, 576 (C.D.Cal. 2005).

individuals, and LifeSpan is by no means a "large corporation."[10] *See, e.g., id.; Coast to Coast Fabrics, Inc. v. Exact Change Only Corp.*, 2006 WL 846716, at *5 (S.D.N.Y. March 29, 2006).

In addition, contrary to Cytira's argument that "it is settled law that 'great weight is accorded to the plaintiff's choice of forum' " (Pl. Mem. at 22), the *AGL* court noted that "a plaintiff's choice of forum is given reduced significance when the operative facts of the case have little connection to the plaintiff's chosen forum." *AGL* at *5. *Accord: Kreisner v. Hilton Hotel Corp*, 468 F. Supp. 176 (E.D.N.Y. 1979) (discussed in Def. Mem. at 23). As in *AGL,* "the operative facts especially relevant to the issue at hand have little connection to New York, and the convenience of the witnesses weighs strongly in favor of transfer." *Id.* Therefore, the Court should give reduced significance to Cytira's choice of forum. Based on the locus of the operative facts and the convenience to the witnesses, transfer of the venue of the case at bar to the Western District of Washington is appropriate and in accord with *AGL*.

Dated:   New York, New York
         September 20, 2007

           THELEN REID BROWN RAYSMAN
           & STEINER LLP

           By:   s/ John Fedun
                John Fedun

           900 Third Avenue
           New York, New York  10022
           Direct Dial: (212) 895-2125
           Direct Fax: (212) 829-2276
           Attorneys for Defendant LifeSpan BioSciences, Inc.

Of Counsel:

Glenn R. Nelson, WSBA #5758
Oles Morrison Rinker & Baker LLP
701 Pike Street, Suite 1700
Seattle, WA  98101
Phone: (206) 623-3427
Fax: (206) 682-6234

---

[10] Cytira notably omits in its quotation from *Rates v. UTT* (Cytira's Mem. at 25) the words "such as an individual plaintiff suing a large corporation." *Rates*, 1995 WL 16788, at 5.

13